IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

**MARGARITO VILLA, GRACIELA SALINAS,
OSCAR BONILLA, BEATRICE GARCIA, RAMON
TORRES, VELIA TORRES, PEDRO RUBIO OCHOA,
and ELIDA MARQUEZ,**

    Plaintiffs,

  v.                                                                          Civ. No. 09-976 BB/WPL

**DONA ANA COUNTY, et al.,**

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court for consideration of several motions to dismiss filed by various Defendants. [Docs. 8, 12, 16, 47] Having reviewed the submissions of the parties and the relevant law, the Court will decide these motions as discussed below.

**Facts and Procedural History**

Plaintiffs all reside in or near Las Cruces, New Mexico. All Plaintiffs are Hispanic and were owners of poultry denominated as "game roosters" in Plaintiffs' complaint. New Mexico has recently outlawed the practice of cockfighting; in addition, the statute forbids anyone from training, equipping, or sponsoring a rooster for the purpose of having it fight another rooster. NMSA § 30-18-9. In the spring of 2009, law enforcement officers encountered Plaintiffs at their respective homes; the circumstances surrounding these encounters are disputed as discussed below. As a result of these encounters the law enforcement officers conducted searches of some Plaintiffs' residences and yards, and obtained possession of poultry belonging to certain Plaintiffs. It is undisputed that some poultry was destroyed by Defendants after they obtained possession of the poultry; again, however, the events leading up to this destruction are under

dispute. Two of the Plaintiffs were convicted of violating the cockfighting statute following these encounters.

Plaintiffs filed the instant lawsuit as a result of the encounters with law enforcement officers. Their complaint contains twenty-one causes of action based on the United States Constitution and the New Mexico Tort Claims Act ("TCA"). In response, Defendants filed four different motions to dismiss, raising a number of grounds for dismissal. These motions will be addressed separately, except for the one motion [Doc. 47] which simply joins in motions filed by other Defendants.

**Standard of Review**

It is first necessary to discuss certain procedural misunderstandings that have occurred in this case with respect to the motion to dismiss entitled "Second Motion to Dismiss," filed by a number of Defendants. [Doc. 12] Defendants attached a copy of a New Mexico Court of Appeals opinion to this pleading. Plaintiffs then maintained that such attachment converted the motion to dismiss into a motion for summary judgment, and proceeded to attach exhibits such as photographs to their response to the motion. [Doc. 17] Defendants countered by submitting a number of their own exhibits with their reply brief. [Doc. 25] Subsequently, without requesting permission to do so, Plaintiffs filed a sur-reply brief and attached several affidavits to that brief. [Doc. 30]

Several aspects of this procedural history merit comment. First, Plaintiff's assumption that attaching an opinion to a motion to dismiss converts the motion to a summary-judgment motion is incorrect. Attaching legal authority to a brief is no different than citing to legal authority in the brief itself. It is not the same as attaching factual material and thereby asking the Court to consider facts other than those alleged in the complaint. Furthermore, contrary to the parties' assumption, a motion to dismiss is not automatically converted to a motion for summary

2

judgment even if "outside" factual material is submitted during briefing. The Court retains discretion to exclude this material or to refuse to consider it in ruling on the motion. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir.2007) ("[A] motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings."). Finally, this District's local rules explicitly state that the filing of a sur-reply brief requires leave of the court. DNMLR 7.4(b). Plaintiffs' sur-reply is in violation of that rule, and counsel is cautioned to adhere to the requirements for motions practice set out in the local rules in the future.

Having said the above, the Court has determined that no good purpose would be served by ignoring the factual material submitted by the parties. Therefore, the Second Motion to Dismiss[1] will be addressed under a summary-judgment standard rather than the normal standard applied under Federal Rule of Civil Procedure 12(b)(6). Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Medina v. Income Support Div.*, 413 F.3d 1131, 1133 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)). In response, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith*, 475 U.S. 574, 587-88 (1986). To avoid summary judgment, the nonmoving party may not rest upon the mere allegations in the pleadings but must show, at a minimum, an inference of the existence of each essential element of the case. *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016-17 (10th Cir. 2001) (citing *Hulsey v. K-Mart, Inc.*, 43

---

[1]As well as the City of Las Cruces motion to dismiss, to the extent it joins in the Second Motion to Dismiss. [Doc. 47]

F.3d 555, 557 (10th Cir. 1994)).  When viewing the evidence, the Court must draw reasonable inferences in favor of the non-moving party.  *Matsushita*, 475 U.S. at 587.

With  respect to the other motions to dismiss, the standard applied will be the Rule 12(b)(6) standard.  In deciding a motion to dismiss, the Court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.  *See Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008).  The Court looks to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief.  *See id.*  A plaintiff does not have to provide detailed facts but the complaint must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).   The Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

**Discussion**

**A.  Motion of Animal Protection of New Mexico, Inc.**

Defendant Animal Protection ("APNM") is a private, non-profit corporation and is the employer of one of the individual Defendants, Heather Ferguson.  Plaintiffs allege that Ferguson was involved in planning and carrying out the "raids"[2] on their properties and the destruction of their poultry.  APNM has moved for summary judgment on the basis of two arguments:  first, APNM cannot be held liable for any of the torts alleged by Plaintiffs because the New Mexico Tort Claims Act ("TCA") precludes such liability; second, APNM cannot be held liable for any of the constitutional claims alleged by Plaintiffs because § 1983 jurisprudence disavows the possibility of *respondeat superior* liability for such claims.[3]

---

[2]Plaintiffs' terminology for the encounters that have led to this lawsuit.

[3]It must be kept in mind that this motion to dismiss is brought on behalf of APNM only, and not on behalf of its employee Defendant Ferguson.  Ferguson is participating in a different motion to dismiss filed by the County and City Defendants.  [Doc. 12]

APNM's argument concerning the tort claims proceeds as follows. All allegations in the complaint concerning Defendant Ferguson are to the effect that she participated in activities with law enforcement officers and assisted them as they performed official duties.  Therefore, she qualifies as a "public employee" under the TCA, and is entitled to the immunity protections provided by that statute.  Under the TCA, furthermore, only law enforcement officers can be held liable for the types of torts Plaintiffs have alleged in the complaint, and Ferguson is not a law enforcement officer.  Since Ferguson has immunity from Plaintiffs' claims, her employer APNM cannot be found liable for those claims either.  Alternatively, if any entity is liable for torts she allegedly committed, the TCA provides that a public entity, rather than a private employer such as APNM, is subject to such liability.

Plaintiffs respond to APNM's arguments by maintaining the claims they have brought against APNM are not brought under the TCA, but are common-law tort claims such as trespass, conversion, and intentional infliction of emotional distress ("IIED").  According to Plaintiffs, the immunity provisions of the TCA therefore have no applicability to Defendant Ferguson or her employer, APNM.  Plaintiffs' argument, however, ignores the TCA's definition of a "public employee," which includes "persons acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation."  NMSA § 41-4-3(F)(3).  This provision has been interpreted to include individuals acting on behalf of a governmental entity, even if they are not employed by that entity or paid by that entity.  *See Celaya v. Hall*, 85 P.3d 239, 242 (N.M. 2004).  As a result, a volunteer acting on behalf of a government entity is immune from suit under the TCA, except to the extent that statute waives immunity.  *See id.*

All the allegations in the complaint that concern Defendant Ferguson indicate she was acting on behalf governmental entities even though she is an employee of a private entity.  She allegedly helped plan the "raids," was present during the encounters with Plaintiffs, and

participated in the destruction of the poultry.  All of these activities were allegedly carried out in conjunction with law enforcement officers of either the City of Las Cruces or Doña Ana County, both of which are government entities.  In addition, the activities allegedly engaged in by Defendant Ferguson and the other Defendants are functions that are performed by the government and not private entities – searching premises, holding persons in custody, and taking possession of poultry purportedly to enforce a state law.  In fact, to state a claim against Defendant Ferguson under § 1983, Plaintiffs specifically maintained she qualifies as a state actor because she conspired and acted in concert with law enforcement officers.  Therefore, under the allegations of Plaintiffs' complaint no other conclusion can be drawn except that Ferguson was acting as a public employee during the activities alleged in the complaint.

     Given Ferguson's status as a public employee, under *Celaya* she is entitled to the same TCA immunity as any other government employee.  In other words, unless the TCA provides a waiver of immunity, Ferguson cannot be sued for torts she may have committed while acting as a public employee.  Most of the torts alleged by Plaintiffs, however, are subject to a waiver of immunity only if the public employee committing them qualifies as a law enforcement officer under § 41-4-12.  For example, the torts of false imprisonment, malicious prosecution, trespass (as a violation of a property right), and conversion (same) are all torts enumerated in § 41-4-12 but not found in any other immunity-waiver provision in the TCA.  Nothing in the complaint indicates Defendant Ferguson should be considered a law enforcement officer for TCA purposes. *See, e.g.,* NMSA § 41-4-3(D) (defining law enforcement officer as "any full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense, [or] to maintain public order or to make arrests for crimes...).  For this reason, the § 41-4-12 waiver of immunity does not apply to Ferguson and she remains immune from these torts.

In addition, plain negligence, unjust enrichment, and intentional infliction of emotional distress ("IIED"), as alleged by Plaintiffs in Counts 19 and 20, are not subject to any waiver of immunity at all under the TCA, even for law enforcement officers. *See, e.g., Romero v. Otero*, 678 F.Supp. 1535, 1540 (D. N.M. 1987) (TCA does not waive immunity for IIED claims); NMSA §§ 41-4-1 *et seq.* (containing no language waiving immunity for such torts). Absent such a waiver Defendant Ferguson retains her TCA-granted immunity from these torts. In sum, Ferguson possesses the same immunity as a public employee who is not a law enforcement officer, and this immunity precludes any liability that might be imposed on her for the common-law torts alleged in Plaintiffs' complaint.[4]

Given the allegations in the complaint, the only possible legal basis for imposing tort liability on APNM is the concept of vicarious liability, or *respondeat superior*. This is because APNM, as a corporation, generally can act only through its employees. *See, e.g., Magnum Foods, Inc. v. Continental Cas. Co.*, 36 F.3d 1491, 1499 (10th Cir. 1994). The only allegations in the complaint concerning officers or employees of APNM are those directed at Defendant Ferguson; there are no allegations that might lead to direct tort liability of APNM, such as allegations of negligent hiring or retention. *See id.* (discussing direct liability of corporation). Since Defendant Ferguson is immune from liability for the torts alleged in the complaint, there is no ground for imposing vicarious liability on APNM.[5]

---

[4]The Court notes Plaintiffs have not argued that Defendant Ferguson was acting as an independent contractor during the events alleged in the complaint. *See Celaya v. Hall, supra*, 85 P.3d at 242 (discussing fact that TCA excludes independent contractors from the definition of public employees). The Court's review of the allegations in Plaintiffs' complaint reveal no allegations of fact that could support a finding that Ferguson's actions were those of an independent contractor rather than an employee.

[5]Having reached this conclusion, the Court need not address APNM's alternate ground for dismissal of the tort claims brought against it – that a governmental entity, rather than a private employer, is vicariously liable for torts committed by a volunteer such as Defendant

A somewhat different analysis applies to the constitutional claims brought against APNM, but the result is the same.  APNM points out, again, that the only basis for liability alleged with respect to APNM is vicarious liability for Defendant Ferguson's alleged constitutional violations.  APNM then argues that under § 1983, no vicarious liability is possible; instead, municipalities and other employers are only responsible for their own actions, such as policies or customs that lead to constitutional violations.  *See  Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-95 (1978).  Plaintiffs respond to this argument with two basic assertions: first, that the *Monell* doctrine does not apply to private employers such as APNM; second, that the complaint alleges APNM itself conspired with other Defendants to violate Plaintiffs' constitutional rights, and thus alleges direct liability against APNM.

Plaintiffs' first argument is simply not a correct statement of the law.  The Tenth Circuit has held that private corporate employers may not be subjected to vicarious liability under § 1983, and this Court is bound by that authority.  *See DeVargas v. Mason & Hanger-Silas Mason Co., Inc.*, 844 F.2d 714, 723 (10th Cir. 1988) (*Monell* rationale applies to corporate defendants as well as municipalities);  *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1433 (10th Cir.1984).

Plaintiffs' second argument founders because the complaint alleges no facts supporting the assertion that APNM conspired with other Defendants; it simply makes that bare allegation.  Such conclusory allegations are not sufficient to survive a motion to dismiss.  *See, e.g., Bell Atlantic v. Twombly*, *supra*, 550 U.S. at 544.  The only specific factual allegations in the complaint concerning APNM are those that implicate its employee, Defendant Ferguson.  As discussed above, however, APNM cannot be held vicariously liable under § 1983 for the actions

---

Ferguson.  The Court notes, however, that language in the *Celaya* opinion would support APNM's position.  *See, e.g., id.* at 242 (TCA ensures that the government will be financially accountable when volunteers commit certain torts).

of its employee. Absent allegations that might tie APNM itself, rather than Defendant Ferguson, to the alleged conspiracy, the complaint states no § 1983 cause of action against APNM.[6]

### B. Motion of Sheriff's Department and Code Enforcement

The Doña Ana County Sheriff's Department and the Doña Ana County Code Enforcement move to dismiss all claims against them on the basis they are not suable entities. Instead, they argue, they are sub-agencies of the proper governmental-entity defendant, Doña Ana County. This argument is unavailing with respect to the claims brought under the TCA. New Mexico law establishes that the agency possessing direct supervisory authority over a particular public employee may be named as a defendant in a lawsuit brought under the TCA for torts allegedly committed by that employee. *See Abalos v. Bernalillo County Dist. Att'y's Office*, 734 P.2d 794, 799 (N.M. App. 1987). Thus, a city or county need not be named in such a suit, if there is a particular city or county agency involved in supervising the offending employee. *See id.* For TCA purposes, apparently, it may not matter whether an agency has the authority to sue and be sued; the agency may be named as a defendant despite its legal status.

The situation is more complicated with respect to Plaintiffs' § 1983 civil-rights claims. As Defendants point out, the Tenth Circuit has held that a city police department is not a "suable

---

[6]It was necessary for Plaintiffs to allege specific acts by APNM officers or employees, for which APNM could be held directly liable rather than vicariously liable, to state a claim against APNM for violation of Plaintiffs' civil rights. The complaint does not accomplish this. *See, e.g., Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010) (to maintain a viable § 1983 action against a private corporation acting as a government agent, a plaintiff must demonstrate that a constitutional deprivation was caused by an express policy or custom promulgated by that corporation, or by the actions of an individual with policymaking authority); *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004)(private corporation is liable under § 1983 only if there exists a policy, a custom, or an action by those who represent official policy, which inflicts an injury actionable under § 1983). There are no factual allegations in the complaint from which it could be inferred that Defendant Ferguson held a policymaking position with APNM, or that APNM had a custom or policy of committing constitutional violations such as those alleged in the complaint.

entity" in a § 1983 case. *See Martinez v. Winner,* 771 F.2d 424, 444 (10th Cir. 1985), *vacated as moot*, 800 F.2d 230 (10th Cir. 1986). This holding, however, was stated in one sentence and was not supported by any reference to legal authority. *See id.*[7] Since *Martinez* was decided a few circuit courts have adopted its statement and applied it to sheriff's departments. *See, e.g., Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (claim against sheriff's department was correctly dismissed because such departments are not usually considered legal entities subject to suit). On the other hand, in federal court the capacity to sue or be sued "shall be determined by the law of the state in which the district court is held." F.R.C.P. 17(b). The discussion in the preceding paragraph establishes that in New Mexico agencies such as a sheriff's department may be named as defendants, at least for purposes of a TCA claim. Whether that principle can be extended to § 1983 claims appears to be an open question. At this point, however, it is an open question that seems to make no practical difference in the case; Plaintiffs will not be allowed to obtain a double recovery no matter how many defendants they name. For the time being, therefore, the Court will deny this motion. If Defendants submit persuasive authority indicating that in New Mexico agencies such as the Sheriff's Department or the Code Enforcement agency do not have authority to sue or be sued, the Court will reconsider this decision.

### C. Motion of County Defendants, City Defendants, and Individual Defendants

As noted above, the Court has considered the evidentiary materials submitted by the parties and will address this motion under summary-judgment standards. Defendants have raised

---

[7]The Tenth Circuit has also stated in an unpublished opinion that the Albuquerque Police Department is not a proper § 1983 defendant because it lacks a legal identity apart from the City of Albuquerque. *Henry v. Albuquerque Police Dep't*, 2002 WL 31379859 fn. 1 (10th Cir. 2002). *Henry*, however, expressly relied on an earlier unpublished case in which the Tenth Circuit, rather than addressing the issue as the *Henry* footnote contends, merely quoted a district court's statement; the Tenth Circuit did not decide whether that statement was correct or not. *See Ketchum v. Albuquerque Police Dep't*, 1992 WL 51481 (10th Cir. 1992, unpublished). *Henry*, therefore, is not persuasive authority.

a number of arguments in support of their request for summary judgment, each of which will be addressed separately.

      **1. Heck v. Humphreys Argument:** Defendants first contend the *Heck v. Humphreys* doctrine bars the claims of some Plaintiffs. 512 U.S. 477 (1994). Under the *Heck* case a civil claim for damages, such as a § 1983 case, may not be pursued if success in the civil case would necessarily imply the invalidity of a criminal conviction or sentence. *See id.*, 512 U.S. at 487. According to *Heck* the correct means of collateral attack on such a conviction or sentence is through a petition for habeas corpus, and a civil action may not be used to side-step the requirements of a habeas petition. *Id.* at 484-86. Defendants point out that Plaintiffs Ramon Torres and Pedro Ochoa were both convicted of violating the cockfighting statute. Therefore, argue Defendants, their claims must be dismissed. Citing no authority in support of the proposition that the *Heck* bar applies to family members as well as those who have been convicted, Defendants also contend the claims of these Plaintiffs' spouses must be dismissed. The Court disagrees with Defendants' bald assertions.

    The Tenth Circuit has held several times that the *Heck v. Humphreys* doctrine does not apply to Fourth Amendment claims such as claims for unlawful detention or arrest, or illegal search and seizure. *See Laurino v. Tate*, 220 F.3d 1213, 1217 (10th Cir. 2000); *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 558 (10th Cir. 1999). This is because ultimate success on such a claim does not necessarily question the validity of an underlying conviction, due to doctrines such as independent source, inevitable discovery, and harmless error. *Beck*. Many of Plaintiffs' claims concern allegedly unlawful detentions, arrests, searches, and seizures. These claims, under *Beck,* are not subject to the *Heck* bar.

    The same analysis applies to the claims arising out of Defendants' allegedly unlawful acts of seizing and destroying Plaintiffs' poultry. Success on these due-process types of claims would

have no impact on any criminal convictions.  *See, e.g.*, *Beck*, 195 F.3d at 559 (*Heck* doctrine did not apply to plaintiff's claim for alleged denial of due process arising out of disposal of plaintiff's vehicle without providing prior notice).  In sum, the *Heck* bar does not apply to any of the claims raised by Plaintiffs in this case.[8]

**2. Claim for Qualified Immunity:**  Defendants next argue they are entitled to qualified immunity, raising different arguments with respect to different groups of Plaintiffs.  As to the Torres and Ochoa Plaintiffs, including their spouses, they again proffer the non-meritorious *Heck v. Humphreys* argument.  For the reasons stated above, that argument is rejected and the claim of qualified immunity as to Mr. Torres, Mr. Ochoa, Plaintiff Velia Torres, and Plaintiff Elida Marquez is denied.

As to Plaintiffs Margarito Villa and Graciela Salinas, Defendants argue that Mr. Villa consented to a search of his property and all of these Plaintiffs' § 1983 claims fail as a result. [Doc. 25, Exh. A]  These Plaintiffs, however, have submitted an affidavit that raises questions as to whether the consent to search was knowing and voluntary. [Doc. 30, Exh. 1]  Mr. Villa states that he consented only to a "welfare check" of his roosters, rather than a full search of his property.[9]  Since he does not speak English, the fact that the consent form allows a complete

---

[8]Due to this holding, it is unnecessary to decide whether *Heck* would ever bar a spouse's claim, as Defendants maintain.  The Court has serious reservations about that proposition.  In addition, the Court notes that both Plaintiff Torres and Plaintiff Ochoa appear to have satisfied their punishments, including periods of probation. [Doc. 25, Exhs. C, F]  Once that has occurred, the remedy of habeas corpus is no longer available, and there is a circuit split as to whether in such circumstances the *Heck* bar still applies.  *See Vasquez Arroyo v. Starks*, 589 F.3d 1091, 1096 (10th Cir. 2009) (noting virtually 50/50 circuit split on question of whether *Heck* applies when a habeas remedy is lacking; declining to decide the issue).  For the reasons noted above, the Court need not address that difficult question either.

[9]It is not clear to the Court what the scope of a "welfare check" would be, as compared to a search of the premises.  It certainly would not seem to encompass a search of the residence, however.

search of the premises is not dispositive as to the validity of his consent. Consent to search must be voluntary, and the validity of such consent is determined by examining the totality of the circumstances. *See United States v. Zubia-Melendez,* 263 F.3d 1155, 1162 (10th Cir. 2001). Relevant factors include, among others, the threatening presence of a number of law enforcement officers, the use of trickery or deception, and the individual's physical or mental condition. *See Eidson v. Owens*, 515 F.3d 1139, 1144 (10th Cir. 2008). According to the materials submitted by Defendants, there were at least three law enforcement officers present on these Plaintiffs' property at the time the purported consent to search was obtained. [Doc. 25, Exh. B, p. 2] Plaintiff Villa spoke little or no English, and claims he was told the officers were on his property only to perform a welfare check of his roosters. Viewing the evidence in the light most favorable to Plaintiffs, there is a fact question as to the voluntariness of Mr. Villa's consent to the search. *See United States v. Luna-Santana*, 128 Fed.Appx. 42 (10th Cir. 2005) ("Whether the consent to search was voluntary is a question of fact determined from the totality of the circumstances."), citing *United States v. West*, 219 F.3d 1171, 1177 (10th Cir. 2000).

  Furthermore, the issue of whether Plaintiff Villa consented to the search is essentially irrelevant to Plaintiffs' claims concerning the seizure and destruction of their property, the poultry. Consent to search is not tantamount to consent to seizure and destruction of property. The Court notes there is a New Mexico statute setting out the procedures that are to be followed in cases involving seizure and disposition of livestock such as poultry. NMSA §§ 30-18-1.1, 1.2. It does not appear those procedures were followed in this case; Defendants' own evidentiary submissions indicate that a number of roosters, including those who were in good health, were euthanized at the site for reasons that are unexplained at this point. [Doc. 25, Exh. B, pp. 4, 7] The Court recognizes that Defendants' submissions indicate the euthanization was done at the request of Plaintiff Villa and Plaintiff Salinas. [*Id.*] However, Plaintiffs' affidavit states the

consent to euthanization occurred only after these Plaintiffs were threatened with felony convictions as well as monetary penalties. [Doc. 30, Exh. 1] This raises a genuine issue of material fact as to whether the consent was valid. *See, e.g., Eidson v. Owens, supra*, 515 F.3d at 1147 (an assertion that there are punitive ramifications to an individual's exercise of the constitutional right to refuse consent is coercive). Furthermore, no New Mexico authority the Court has been able to locate seems to authorize a livestock owner to consent to, or request destruction of, perfectly healthy animals, at least without court intervention. *See* NMSA § 30-18-1.2(B), (C), ( F) (court shall hold a hearing to determine if animal is being treated cruelly or if owner cannot adequately provide for the animal; upon petition of animal control agency or shelter, court may order owner to post security for the costs of caring for the animal; owner may voluntarily relinquish animal in lieu of posting security). There are simply too many factual issues surrounding the seizure and destruction of Plaintiffs' poultry, and such seizure and destruction undeniably implicates due-process concerns. *See, e.g., DiCesare v. Stuart*, 12 F.3d 973, 978 (10th Cir. 1993) (plaintiff presented legitimate due process claim where his horses were seized and sold without notice or opportunity for plaintiff to contest the seizure and disposal of his property). Defendants are not entitled to qualified immunity on these Plaintiffs' property-related claims.

Defendants contend they are entitled to qualified immunity with respect to Plaintiffs Oscar Bonilla and Beatrice Garcia's claims because when Mr. Bonilla declined to consent to a search of his property, Defendants left the premises. Mr. Bonilla, however, has filed an affidavit claiming Defendants were physically present on his property from 6:00 p.m. until 11:30 a.m., a period of over seventeen hours.[10] [Doc. 30, Exh. 5] He also claims he and his wife (Ms. Garcia)

---

[10]It is possible the 11:30 a.m. is a typographical error, and the affidavit intended to state 11:30 p.m. as Defendants' departure time; the affidavit states that Plaintiff Bonilla and his wife were interrogated for over six hours, not seventeen hours, and contains no indication of what

were "held" and "interrogated" for over six hours. [*Id.*] These averments raise an issue of fact as to whether Plaintiffs Bonilla and Garcia were detained for such an extensive period of time that their detention ripened into an arrest. *See United States v. White*, 584 F.3d 935, 952-53 (10th Cir. 2009) (investigative detention may be transformed into de facto arrest if it lasts too long under the specific circumstances of a given case); *Houston v. Clark County Sheriff Deputy John Does 1-5,* 174 F.3d 809, 814 (6th Cir. 1999) (investigative stop may ripen into an arrest through the passage of time or the use of force, depending on the circumstances); *cf. United States v. Maltais*, 403 F.3d 550, 557 (8th Cir. 2005) (detention of three hours would be unreasonable under circumstances different than those present in *Maltais*). Furthermore, the facts that Defendants left the premises rather than obtaining a search warrant, and in fact explicitly decided they did not have probable cause to obtain such a warrant, raise a fact question as to whether these Plaintiffs were subjected to a de facto arrest without probable cause. [Doc. 25, Exh. D, p. 4]; *see United States v. Johnson*, 592 F.3d 442, 447-48 (3d Cir. 2010) (de facto arrest, unlike *Terry* stop, must be supported by probable cause). The mere fact that Defendants left these Plaintiffs' premises at some point when they did not obtain consent to search does not entitle them to qualified immunity, when there are fact issues regarding how long they were on the premises as well as whether they detained and interrogated Mr. Bonilla and Ms. Garcia for that entire time as Mr. Bonilla alleges.

In addition to their Plaintiff-specific arguments, Defendants raise several general arguments that are directed at all of the claims raised in the complaint. They first argue they did not violate any clearly established law because the constitutionality of New Mexico's cockfighting statute has been upheld by the New Mexico Court of Appeals. This argument

---

Defendants were doing for the remaining eleven hours. Even if the affidavit intended to say 11:30 p.m. rather than a.m., Defendants were still allegedly present on Mr. Bonilla's property for almost six hours.

misses the mark because Plaintiffs' claims, as presented in the complaint, do not depend on the constitutionality of the statute. Plaintiffs maintain they have been subjected to unreasonable searches of their property, unconstitutional detentions of their persons, and unconstitutional seizures of their livestock. These are straightforward Fourth Amendment and Fourteenth Amendment claims, as to which the law has been clearly established for decades.

Defendants also maintain Plaintiffs' substantive-due-process claims should be dismissed because nothing Plaintiffs have alleged is sufficiently outrageous to shock the conscience of a federal judge. *See Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir.2006) (standard for claim invoking substantive due process). In response, Plaintiffs argue there has been a state-wide effort to eliminate all roosters that might be used for cockfighting, with concomitant destruction of thousands of roosters. Unfortunately, Plaintiffs presented no evidence in support of their assertion; the discussion in their briefs concerning other rooster owners across the state who have had roosters confiscated and destroyed is based solely on the argument of Plaintiffs' counsel, and this Court therefore cannot consider it. Furthermore, the Court notes this case is not a class action brought on behalf of all rooster owners in New Mexico; the only claims before the Court are those presented by the individual Plaintiffs who filed this action. The shock-the-conscience test, therefore, applies only to the actions that have been taken against these particular Plaintiffs.

As noted above, Plaintiffs have alleged three general types of "bad acts" on the part of Defendants. They claim they were subjected to both unconstitutional searches of their property and seizures of their persons. With respect to those allegations, no substantive-due-process claims can be maintained. The Tenth Circuit has plainly held that pre-trial deprivations of liberty give rise only to Fourth Amendment claims, not due-process claims. *See Becker v. Kroll*, 494 F.3d 904, 920 (10th Cir. 2007) (citing *Albright v. Oliver*, 510 U.S. 266 (1994)). The *Albright v.*

16

*Oliver* case has also been construed to preclude substantive-due-process claims arising out of searches of premises. *See Jones v. City of Youngstown*, 980 F.Supp. 908, 917-18 (N.D.Ohio 1997) (due process claim arising out of search of premises failed because, after *Albright*, "substantive due process analysis generally may not be employed absent a showing of governmental interference with a fundamental constitutional right such as matters relating to marriage, family, and procreation."); *see also Howell v. Polk*, 2006 WL 463192 (D. Ariz. 2006, unpublished) (claim that search warrant was obtained and executed in arbitrary and oppressive manner was properly brought under Fourth Amendment, not as substantive-due-process claim); *Piskanin v. Hammer*, 2005 WL 3071760 (E.D. Pa. 2005, unpublished) ("Claims of unreasonable search and seizure are, however, governed by explicit constitutional text in the Fourth Amendment and may not, therefore, be brought as claims for violation of the right to substantive due process."). Plaintiffs' claims of unlawful detention and search, therefore, do not give rise to any claims for deprivation of substantive due process.

The remaining category of claims, involving the seizure and destruction of certain Plaintiffs' poultry, clearly do implicate the Fourteenth Amendment's due-process protections. However, no evidence has been submitted that shocks the Court's conscience with respect to these actions. The seizure and euthanization of apparently healthy poultry is puzzling and merits explanation, but is still simply a deprivation of property.[11] Plaintiffs' substantive-due-process claims will be dismissed. On the other hand, their claims that they were deprived of their property without notice and an opportunity to be heard, which are standard procedural-due-process claims, will stand.

---

[11]The Court notes it is Plaintiffs' right to substantive due process that is at stake here, not the roosters'. The Fourteenth Amendment protects American citizens from deprivation of their lives without due process; perhaps unfortunately, it does not protect their animals from that fate.

Defendants contend a number of the causes of action alleged in the complaint are duplicative. The Court sees no need at this juncture to examine all of the twenty-plus claims stated in the complaint to see which ones might duplicate others. Plaintiffs will not be allowed to submit duplicative claims to a jury. The parties' review of this opinion should provide guidance as to which claims will be allowed to proceed and which will not. If more information is needed by the parties, the matter can be sorted out at the pre-trial-report stage.

As to the TCA claims, Defendants maintain Counts 14 and 17 of the complaint should be dismissed because there is no waiver of immunity in the TCA for those claims. This argument is somewhat baffling, because the language used in these claims is lifted virtually verbatim from § 41-4-12, the TCA provision concerning waiver of immunity for actions of law enforcement officers. This provision of the TCA waives immunity when law enforcement officers violate someone's property rights, as is alleged in Count 17,[12] or violate an individual's constitutional rights, as is alleged in Count 14.[13] Furthermore, Defendants' own evidentiary submissions establish that at least some of the individual Defendants were employed as law enforcement officers at the time of the incidents in question. [Doc. 25, all Exhs.] These two claims will be allowed to proceed.

Defendants fare better with their argument that the claim for IIED should be dismissed since there is no waiver of immunity for such a claim in the TCA. As the Court has discussed above, this assertion is correct, and the IIED claim will be dismissed.

---

[12]It is apparent this Count is referring to the seizure and destruction of the poultry.

[13]This Count obviously refers to the alleged violations of Plaintiffs' Fourth Amendment rights.

**Conclusion**

Pursuant to the foregoing, Defendant APNM's motion to dismiss (Doc. 16) will be granted; the motion to dismiss filed by Defendants Sheriff's Department and Code Enforcement (Doc. 8) will be denied; and the motion to dismiss filed by all City and County Defendants (Doc. 12) will be denied, except that Plaintiffs' substantive-due-process and IIED claims will be dismissed.

**ORDER**

A Memorandum Opinion having been entered this date, it is hereby ORDERED that the motion to dismiss filed by Defendant APNM (Doc. 16) be, and hereby is, GRANTED; the first motion to dismiss filed by the County Defendants (Doc. 8), as joined in by the City Defendants (Doc. 47) be, and hereby is, DENIED; and the second motion to dismiss filed by the County Defendants (Doc. 12), as joined in by the City Defendants (Doc. 47) be, and hereby is, GRANTED in part and DENIED in part.

Dated this 14th day of September, 2010.

BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE