IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

**MARGARITA VILLA**, **GRACIELA SALINAS,**
**OSCAR BONILLA, BEATRICE GARCIA,**
**RAMON TORRES, VELIA TORRES, PEDRO**
**RUBIO OCHOA, and ELIDA MARQUEZ,**

      Plaintiffs,

v.                                                                                                No. CIV 09-976 BB/WPL

**DOÑA ANA COUNTY,** *et al.***,**

      Defendants.

## MEMORANDUM OPINION

This matter is before the Court for consideration of Defendant Animal Cruelty Task Force ("ACTF") of New Mexico's motion to dismiss (Doc. 67). No other defendant is a party to this motion. After considering all submissions of the parties and the applicable law, the Court will *GRANT* the motion.

**Background**

Cockfighting is the ancient[1] sport of placing two roosters or "gamecocks" in a ring and letting them fight until one is dead or seriously injured. In 2007, New Mexico became the 49th state in this nation to outlaw cockfighting. NMSA § 30-18-9. State law also forbids anyone from training, equipping, or sponsoring a rooster for the purpose of having it fight another rooster. *Id*. In addition to the statutory prohibitions, the New Mexico Legislature established the

---

[1] The entry under "cockfighting" in the Encyclopaedia Britannica reads: "The sport was popular in ancient times in India, China, Persia, and other Eastern countries and was introduced into Greece in the time of Themistocles (c. 524–460 BC). For a long time the Romans affected to despise this "Greek diversion," but they ended up adopting it so enthusiastically that the agricultural writer Columella (1st century AD) complained that its devotees often spent their whole patrimony in betting at the side of the pit." *Cockfighting*. Encyclopædia Britannica 2008.

Animal Cruelty Task Force.  Mot. to Dismiss, p. 1.  The Animal Cruelty Task Force ("ACTF") "is a volunteer group comprised of various law enforcement and animal control agencies in New Mexico, members of the New Mexico Board of Veterinary Medicine, and members of several animal rescue and advocacy organizations."  *Id*., pp. 1-2.

This suit arises from four cockfighting investigations that transpired in 2009.  According to the complaint, law enforcement officers arrived at Plaintiffs' properties without search warrants and conducted "raids" in order to uncover evidence of cockfighting.  *See, e.g.*, Compl., ¶ 29.  Plaintiffs allege they were detained in their homes and barns, while officers searched their properties.  At three of the four properties, cocks were discovered and then exterminated by Defendants Gojkovich, Ferguson, Feeser, and other officers.  Compl., ¶¶ 47, 56, 65.  (Those defendants are not parties in this motion to dismiss.)

Plaintiffs then filed the instant suit, alleging that Defendant ACTF conspired with other named Defendants to "cull the entire game rooster population of Doña Ana County and the State of New Mexico."  Compl., ¶ 10.  According to the complaint, Defendant Childress held planning meetings on the days when raids of cockfighting properties were planned, and Defendant ACTF was one of multiple agencies represented at those meetings.  Compl., ¶ 29.  Plaintiffs allege that Defendant Childress conducted those game-cock raids unlawfully, and ACTF, represented by its employee Defendant Heather Ferguson, participated in the raids and subsequent killing of all discovered gamecocks.  Compl., ¶¶ 47, 56, 65.  Defendant ACTF then filed a motion to dismiss, arguing it is not a proper party in this suit.  Mot. to Dismiss, p. 2.

**Standard of Review**

In deciding a motion to dismiss, the Court must accept all well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.  *See Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008).  The Court looks to the specific allegations in

the complaint to determine whether they plausibly support a legal claim for relief. *See id.* A plaintiff does not have to provide detailed facts, but the complaint must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

"When a district court relies on material from outside the pleadings, the court converts the motion to dismiss into a motion for summary judgment." *Price v. Philpot*, 420 F.3d 1158, 1167 (10th Cir. 2005). However, the Court retains discretion to exclude outside material or to refuse to consider it in ruling on a motion to dismiss. *See Alvarado v. KOB-TV, L.L.C.* 493 F.3d 1210, 1215 (10th Cir. 2007) ("[A] motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings"). Plaintiffs appended outside materials to their response in opposition to Defendant ACTF's motion to dismiss (Doc. 68). The Court did not consider those materials in regard to this motion to dismiss, so the motion is not converted to one for summary judgment. *KOB-TV, L.L.C.* 493 F.3d at 1215. The standards for evaluating a motion to dismiss therefore apply here.

**Discussion**

Defendant ACTF is a private, non-profit corporation that is administered by Defendant Animal Protection of New Mexico, Inc., under the laws of New Mexico. Compl., ¶ 14. (Animal Protection of New Mexico, Inc., is not a party to this motion.) For the past two years, it has collaborated with law enforcement agencies on animal fighting and large scale animal cruelty cases. Mot. to Dismiss, p. 2   Defendant ACTF employed Defendant Heather Ferguson, who is not a party to this motion. Compl., ¶ 18. Plaintiffs allege that Defendant ACTF, through its employee Heather Ferguson, was involved in planning and carrying out the raids on their properties and destruction of their gamecocks, hens, eggs, and tie-cords. Compl., ¶¶ 25, 29, 32,

3

34, 47, 56, 65.  Plaintiff's allegations against Defendant do not stem from Defendant's policies and practices as a task force but rather from the acts of an individual employee, Heather Ferguson.  Specifically, Plaintiffs allege that Ferguson participated in activities with law enforcement officers and assisted them as they performed official duties related to cockfighting investigation.

I. 42 U.S.C. § 1983 claims

Plaintiffs bring counts 1-13 of their complaint pursuant to 42 U.S.C. § 1983.  Plaintiffs' complaint contains no allegations that Defendant ACTF had policies or practices that led to the violation of their rights; rather, they allege that Defendant ACTF acted in concert with law enforcement officers through the acts of its employee Heather Ferguson–a *respondeat superior* theory of liability[2].

Liability under § 1983 cannot be imposed vicariously on a theory of *respondeat superior*."  *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006).  However, "§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights ... secured by the Constitution ...." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (quoting 42 U.S.C. § 1983).

---

[2] Typically, only "state actors" or public employees may be held liable under 42 U.S.C. § 1983; however, private entities may be held liable if they are "willful participant[s] in joint action with the State or its agents." *Beedle v. Wilson*, 422 F.3d 1059, 1071 (10th Cir. 2005).  Although Defendant ACTF is a private corporation, Plaintiffs' complaint alleges that it may be held liable under § 1983 for acting jointly with law enforcement officers.

Here, Plaintiffs have not alleged that any specific policy or practice of Defendant ACTF led to the violations described in their complaint. Nor have they alleged any facts that Defendant ACTF, independent from the actions of its employee, violated their rights. Therefore, it is not subject to 42 U.S.C. § 1983 liability for the actions of its employee, Heather Ferguson, as described in Plaintiff's complaint[3]. The Court will therefore grant Defendant ACTF's motion to dismiss Plaintiff's 42 U.S.C. § 1983 claims against it (Counts 1-13).

II. Tort claims

The remaining allegations are ones for tort committed against Plaintiff. All of Plaintiffs' tort claims against Defendant ACTF arise from the actions of Heather Ferguson. To the extent she was assisting and collaborating with law enforcement, she qualifies as a "public employee" under the New Mexico Tort Claims Act ("TCA") and is entitled to the immunity protections provided by that statute. NMSA § 41-4-3(F)(3). This provision has been interpreted to include individuals acting on behalf of a governmental entity, even if they are not employed or paid by that entity. *See Celaya v. Hall*, 85 P.3d 239, 242 (N.M. 2004). As a result, an individual acting on behalf of a government entity, such as Defendant Ferguson acting on behalf of law enforcement officers, is immune from suit under the TCA, except to the extent that statute specifically waives immunity. *See id.*

Given Ferguson's status as a public employee, under *Celaya* she is entitled to the same TCA immunity as any other government employee. In other words, unless the TCA provides a waiver of immunity, Ferguson cannot be sued for torts she may have committed while acting as a public employee. Most of the torts alleged by Plaintiffs, however, are subject to waiver only if

---

[3] The Court notes that private entities "can be liable under § 1983 if the final policymaker takes the unconstitutional action." *Moss v. Kopp*, 559 F.3d 1155, 1168-69 (10th Cir. 2009) (internal quotations omitted). However, there are no factual allegations in the complaint from which it could be inferred that Defendant Ferguson held a policymaking position with ACTF.

the public employee committing them qualifies as a law enforcement officer under § 41-4-12. For example, the torts of false imprisonment, malicious prosecution, trespass (as a violation of a property right), and conversion (same) are all torts enumerated in § 41-4-12 but not found in any other immunity-waiver provision of the TCA.  Nothing in this complaint indicated Defendant Ferguson should be considered a law enforcement office for TCA purposes.  *See, e.g.*, NMSA § 41-4-3(D) (defining law enforcement officer as "any full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense, [or] to maintain public order or to make arrests for crimes...).  *Dunn v. McFeely*, 984 P.2d 760, 766 (N.M.App.Ct. 1999).  For this reason, the § 41-4-12 waiver of immunity does not apply to Ferguson and she remains immune from those torts.

In addition, plain negligence, unjust enrichment, and intentional infliction of emotional distress, as alleged by Plaintiffs in Counts 19-20, are not subject to any waiver of immunity at all under the TCA, even for law enforcement officers.  *See, e.g., Romero v. Otero*, 678 F.Supp. 1535, 1540 (D.N.M. 1987) (TCA does not waive immunity for intentional infliction of emotional distress claims); NMSA §§ 41-4-1 et seq. (containing no language waiving immunity for such torts).   In sum, Defendant Ferguson possesses the same immunity as a public employee who is not a law enforcement officer, and this immunity precludes any liability that might be imposed on her for the common-law torts alleged in Plaintiffs' complaint.

Since Defendant Ferguson has immunity from Plaintiff's tort claims, her employer Defendant ACTF cannot be found liable for those claims, either.  Alternatively, if any entity is liable for torts she allegedly committed, the TCA provides that a public entity, rather than a private employer such as Defendant ACTF, is subject to such liability.

In their response to the instant motion to dismiss, Plaintiffs argue that Defendant ACTF is somehow a branch of the State Attorney General's Office (a public entity) because Defendant

Ferguson "was in contact with the Attorney General's Office and coordinated the raids with them..." Resp. in Opp. to Mot. to Dismiss, p. 4.  However, Plaintiff's complaint states in multiple passages that Defendant ACTF is a "*private* non-profit organization."  Compl., ¶¶ 14, 18, 25 (emphasis added).   Plaintiff's complaint contains no allegation or information that would tend to show that Defendant ACTF is a branch of the Attorney General's Office.  Moreover, the Attorney General's Office is not listed as a defendant in the complaint.  Plaintiffs' statement that Defendant ACTF is a branch of the Attorney General's Office is conclusory, unsupported by other information in the pleadings.  *See Twombly*, 550 U.S. at 555.  The Court need not accept this conclusory statement as fact, so it must assume that Defendant ACTF is a private entity as Plaintiffs state in their complaint.  *Id*.  Since ACTF is a private, not public, entity, the TCA does not subject Defendant ACTF to liability for claims brought pursuant to the alleged actions of Defendant Ferguson[4].

**Conclusion**

Pursuant to the foregoing, Defendant ACTF's motion to dismiss (Doc. 67) will be *GRANTED*.


Dated this 16th day of June, 2011.

                                                           BRUCE D. BLACK
                                                          United States District Judge

---

[4] In their response to the instant motion to dismiss, Plaintiffs allege that the Attorney General's Office may be held independently liable for the alleged violations committed by ACTF.  Resp. in Opp. to Mot. to Dismiss, p. 4.  However, as stated above, the Attorney General's Office is not a defendant in this suit, nor have Plaintiffs alleged sufficient facts to show that it was conspiring with other defendants.  As such, the untimely allegations against the Attorney General's Office will not be considered in this opinion.