# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MARGARITO VILLA, et al.,

   Plaintiffs,

v.             CV 09-0976 BB/WPL

DOÑA ANA COUNTY, et al.,

   Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

The Defendants in this case have filed a Motion to Dismiss and for Sanctions for Discovery Abuse by Plaintiffs (Doc. 89), a Motion to Disqualify Plaintiffs' Counsel and for Sanctions (Doc. 98), and a Motion for Sanctions for Plaintiffs' Failure to Comply with the Court's Order (Doc. 117). The Plaintiffs have filed a Motion to Allow an Extension of the Discovery Deadline and Informal Mediation (Doc. 120). Having considered the motions, responsive pleadings, relevant law and otherwise being fully advised, I find that the Plaintiffs have engaged in a pattern of discovery abuse throughout this litigation warranting a severe sanction. Pursuant to Federal Rules of Civil Procedure 16(f), 26(g)(3), and 37(b), (c) and (d), I recommend that the sanction of dismissal with prejudice be imposed.

### FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiffs, Margarito Villa, Graciela Salinas, Oscar Bonilla, Beatrice Garcia, Ramon Torres, Velia Torres, Pedro Rubio Ochoa and Elida Marquez, allege that the Defendants violated the Constitution, federal law, and New Mexico law when they entered the Plaintiffs' property while

1

investigating game rooster owners in a lawsuit filed on October 13, 2009. (Doc. 1.) Overviews of the subject matter of the complaint have been previously provided by the Court. (*See* Doc. 113 at 1-2; Doc. 87 at 1.) At issue now is the conduct of the Plaintiffs and their counsel, Augustine Rodriguez, throughout the discovery phase of this lawsuit.

Due to the repeated misconduct by the Plaintiffs and Rodriguez, the factual circumstances and motions now at issue are quite complex. I will first address the facts at issue, including the potential ethical issue raised by the Defendants, the problems encountered during the discovery process, and the Plaintiffs' difficulties in following court orders. I will then outline the arguments in the four motions that are now before me. Next, I will state the general legal standards applicable in the motions. Finally, I will apply the legal standards in order to determine the violations that have occurred and the appropriate sanctions.

A.      *Potential Ethical Issue*

Problems have been brought to my attention that began before the initiation of discovery but after the Plaintiffs filed their complaint. The Plaintiffs' complaint in this matter relates to the same facts and circumstances that were at issue in state criminal cases against Ochoa and Ramon Torres. (Doc. 98 at 2.) This complaint was filed on October 12, 2009, and Rodriguez named Robyn Gojkovich and Mary Lou Ward as individual Defendants. (Doc. 1.)

There is no dispute that Rodriguez communicated with Gojkovich and Ward at least once by telephone after the inception of the civil lawsuit about the subject matter of the criminal and civil cases. (Doc. 115 at 2 n.1; Doc. 100 Exs. A-F; Doc. 98 Exs. 1 & 2.) Rodriguez produced notes indicating that one conversation with Gojkovich occurred on October 22, 2009 and that one conversation with Ward took place on November 12, 2009. (Doc. 100 Exs. A-F.)

However, Gojkovich and Ward recall that the conversations took place after the pre-trial conference in *State v. Pedro Ochoa*, M-14-MR-2009-00695, making the date of the contact in late December 2009 or early January 2010. (Doc. 98 Ex. 1 at 1-2; Doc. 98 Ex. 2 at 1.) Ward also recalled speaking with Rodriguez a second time by telephone while Gojkovich was also present. (Doc. 98 Ex. 2 at 2.) Counsel for Gojkovich and Ward entered her appearance on December 16, 2009. (Doc. 7.)

Rodriguez did not seek permission to talk with these individuals from their counsel or the counsel for their employer. (Doc. 98 at 3.) He did not disclose these communications to defense counsel until the Defendants filed a motion seeking his disqualification. (*Id.*; Doc. 100 at 2.)

B.      *The Discovery Process*

Though the case was filed in late 2009, the Defendants filed several dispositive motions and so pretrial discovery deadlines were not established until November of 2010. (Doc. 27.) Once deadlines were set, the case was placed on a six-month discovery track. (Doc. 58.) Discovery was set to terminate on April 25, 2011 and dispositive motions were due by May 16, 2011.[1] (*Id.* at 1, 2.) The trial judge has yet to set a date for the trial of this matter.

On March 9, 2009, the Defendants filed a motion to compel seeking more complete discovery responses from the Plaintiffs regarding several requests for production and interrogatories. (Doc. 77.) The motion to compel followed two attempts by the Defendants to resolve the discovery disputes. (*See* Doc. 87 at 1-2.) In response to each attempt at informal resolution, the Plaintiffs sent supplemental responses. (*Id.*) However, these responses continued to be incomplete, and I ordered

---

[1] This deadline was subsequently extended, and dispositive motions are now due forty-five days after the final decision on the motions at issue in this Proposed Findings and Recommended Disposition. (Doc. 96.)

the Plaintiffs to respond fully to Requests for Production Nos. 1, 2, 6, and 13 and Interrogatories

Nos. 1, 2, 4, 5, 9, 11, 12, 13, 15, 16, and 19. (*Id.* at 2-7.) I overruled the Plaintiffs' objections to

Interrogatory No. 24. (*Id.* at 7-8.) I further ordered that Rodriguez compensate the Defendants for

the costs incurred in preparing and filing the motion to compel. (*Id.* at 8-9.)

The Plaintiffs supplemented their responses, and the supplemental responses were signed

and, therefore, certified as complete and correct based on reasonable inquiry by Rodriguez. (Doc.

117 Ex. 1); *see also* FED. R. CIV. P. 26(g)(1). Though the Plaintiffs assert that they have provided

full and complete responses to these discovery requests, as required by my order granting the motion

to compel, it is clear that a number of their responses remain incomplete. I will address each

incomplete response in turn.[2]

Interrogatory No. 2: The Defendants requested the addresses, telephone numbers, and

anticipated testimony for each witness. (Doc. 117 at 3; Doc. 117 Ex. 1 at 4, 5.) The Plaintiffs added

two new witnesses, Ofelia Garcia and Sotero Almaraz, in their most recent responses. These

individuals were present at the scene of the incident but were not disclosed until Garcia's deposition

on April 15, 2011. (Doc. 89 Ex. F at 15:18-16:15.) The Plaintiffs have provided no reason for this

late disclosure but simply contend that the witnesses were properly revealed prior to the close of

discovery. (Doc. 119 at 3.)

_____

[2] In addition to the interrogatories listed below, the Defendants argued that the Plaintiffs' response to Interrogatory No. 24 was improper. (Doc. 117 at 6-7.) Originally, the Plaintiffs objected to the interrogatory, and I overruled the objection. (Doc. 87 at 7-8.) Accordingly, the Plaintiffs answered the interrogatory in their supplemental responses, providing the names of three similarly situated, non-Hispanic farmers who were treated differently by the Defendants. (Doc. 117 Ex. 1 at 12.) Because the objection was overruled, the Plaintiffs were required to answer. The Defendants cannot now complain that an answer was provided.

Interrogatory No. 4: Salinas, Velia Torres, and Bonilla failed to provide supervisor names, rates of compensation and the reasons for termination in response to the Defendants' request regarding their prior and current employment.[3] (Doc. 117 at 4.) This interrogatory specifically requested information about each Plaintiff's employment history from age eighteen to the present, including the employer's name and address, names of supervisors, duties performed, compensation received, dates of employment, and precise reason for termination of employment. (Doc. 117 Ex. 1 at 5.) For some employers, the Plaintiffs provided all of the requested information. For others, though, some information was missing.[4]

In Salinas' responses, she listed that she worked at Phoenix Corp. from 2004-October of 2006 and Coordinated Care from 2001-2004. (*Id.* at 6.) She listed the addresses and that the telephone numbers were unknown. (*Id.*) She failed to provide any information beyond that. However, after the close of discovery, Salinas provided an affidavit with the previously omitted information and a statement that she did not remember the information at the time but uncovered it through investigation. (Doc. 119 Ex. 2 at 1.) Velia Torres listed her current employer as Rosa's Hair Salon. (*Id.*) She indicated the city and state, her position, and her pay rate as "Hourly + Commission." (*Id.*) She failed to provide any additional information. Furthermore, she contradicted the information about her compensation in her deposition, stating that she is only compensated by commission. (Doc. 117 Ex. 2 at 11:2-13.) Finally, Bonilla omits much information regarding his

---

[3] The Defendants also complain that Ochoa did not list a telephone number for his present employer, Sunset Dairy. (Doc. 117 at 4.) However, the interrogatory does not request that the Plaintiffs provide a telephone number for their employers. (Doc. 117 Ex. 1 at 7.)

[4] The information that is missing was omitted entirely; the Plaintiffs did not, for example, state that they could not recall the answer.

employers, including his pay rate, the reason for employment termination, and his supervisors for all positions. (Doc. 117 Ex. 1 at 7.)

Interrogatories Nos. 5 and 13: The Defendants requested information relating to the damages claimed by the Plaintiffs. (Doc. 117 at 4-5.) The response provided by Torres to Interrogatory No. 5, that he missed four days of work due to hospitalization required because of the Defendants' actions, contradicts his testimony in his deposition. (*Id.* at 5; *see* Doc. 117 Ex. 1 at 8; Doc. 117 Ex. 3 at 15:1-3, 125:23-126:9.) Furthermore, Interrogatory No. 13 was not addressed at all in the Plaintiffs' supplemental responses. (Doc. 117 at 4-5; Doc. 117 Ex. 1 at 9-10.)

Interrogatories Nos. 9 and 15: These interrogatories requested information about the Plaintiffs' communications with the Defendants, including the substance or contents of each communication. (Doc. 117 at 5.) Villa and Salinas state that Animal Control "employees were at the property . . . because of a loose dog and the employees entered the property." (Doc. 117 Ex. 1 at 8, 10.) Ochoa and Marquez state that "Animal Control employees were at the property because of some dogs and the employees entered the property." (*Id.*) They do not describe the substance of any conversations, and they do not state that no conversations took place. (*See id.*) After the close of discovery, Salinas prepared an affidavit stating that the communications did not involve the April incident but concerned her blue heeler dog. (Doc. 119 Ex. 2 at 2.)

Interrogatory No. 11: Torres was ordered to fully answer this interrogatory regarding the medical expenses incurred due to the Defendants' acts, and the Court specifically stated that providing a medical release was insufficient. (Doc. 87 at 6.) The supplemental response suffers the same deficiency, simply stating that the Defendants received his medical records. (Doc. 117 at 5-6; Doc. 117 Ex. 1 at 9.) The Plaintiffs again failed to provide a list of medical expenses related to the

alleged damages. A general reference to records does not suffice as a response to an interrogatory. *Bayview Loan Servicing, LLC v. Boland*, 259 F.R.D. 516, 518-19 (D. Colo. 2009) (citations omitted). Rather, the party must identify the specific responsive documents. *Id.* Torres refers to documents by two service providers, but he does not provide the specific receipts or a list of expenses as required by Federal Rule of Civil Procedure 33(d) and my order.

Interrogatory No. 16: Graciela Salinas failed to provide the jurisdiction or location of the arrests for driving while intoxicated ("DWI") that she identified, a piece of information that was requested by the interrogatory. (Doc. 117 at 6; Doc. 117 Ex. 1 at 11.) The Plaintiffs have provided an affidavit by Salinas stating that, though she did not recall the information at the time, the two arrests took place in Sunland Park, New Mexico. (Doc. 119 Ex. 2 at 2-3.)

Interrogatory No. 19: The Defendants requested that the Plaintiffs specify how they obtained the fowl, their purchase price, and their purpose in owning them. (Doc. 117 at 6.) Bonilla and Garcia responded that "Bonilla kept the roosters as pets, and none of his animals were confiscated or destroyed." (Doc. 117 Ex. 1 at 12.) This response fails to state the manner in which the fowl were obtained or their purchase price. (*Id.*)

In addition to these specific interrogatories, there were additional problems with the responses provided by the Plaintiffs. The Defendants requested that the Plaintiffs produce all witness statements and notes from interviews concerning the subject matter at issue in this case, but the Plaintiffs did not provide or mention the notes of Rodriguez's interviews of the Defendants. (Doc. 77 Ex. 2; Doc. 98 at 3.) The Defendants also requested the Plaintiffs' social security numbers. (Doc. 77 Exs. 4 & 5; Doc. 83 Ex. 1; Doc. 98 at 3.) Instead of responding directly, the Plaintiffs stated that the numbers were included in each Plaintiff's medical release form. (Doc. 89 Ex. G.) Considering

7

that Bonilla recently pled guilty to entering the United States illegally, the number included on his form cannot be a valid social security number. (Doc. 98 at 4; Doc. 98 Ex. 3.) The Plaintiffs now assert that Bonilla can be questioned on this matter during his deposition outside the discovery period and suggest that the number on the release form is a federal identification number issued for tax purposes. (Doc. 97 at 4.) Bonilla also failed to include the name "Marmolejo" in response to the Defendants' interrogatory requesting all names and aliases of each Plaintiff. (Doc. 83 Ex. 1 at 2; Doc. 98 at 4; Doc. 98 Ex. 3.) Finally, the Plaintiffs did not list Torres' complete or correct criminal history in response to interrogatories. (Doc. 77 Ex. 4 at 7; Doc. 77 Ex. 6 at 7; Doc. 83 Ex. 1 at 44-45; Doc. 98 Ex. 4.)

The problems have not been limited to written discovery responses. The Defendants began attempting to schedule depositions on March 25, 2011. (Doc. 89 at 1; Doc. 89 Ex. A at 1.) Rodriguez responded almost immediately to defense counsel's email, but he did not state whether the suggested week would work for him and his clients. (Doc. 97 Ex. 1 at 1.) While Rodriguez was responsive to all further emails, he never stated whether he and his clients were available during the suggested week until after April 1, 2011. The Defendants had also asked whether interpreters would be necessary for the depositions of the Plaintiffs and witnesses. (Doc. 89 at 2; Doc. 89 Ex. A at 1.) Rodriguez advised that all deponents would need a Spanish-speaking interpreter other than Diego Torres, Stephanie Villa, Graciela Salinas and Barbara Gutierrez.[5] (Doc. 89 Ex. B at 1.) However,

_____

[5] In response, the Plaintiffs state that all Plaintiffs and witnesses except for Graciela Salinas, "Ronnie Barron, Sergio Arredondo, Diego Torres, Gerardo Estrada, Stephanie Villa and Barbara Gutierrez" needed interpreters. (Doc. 97 at 3.) The Plaintiffs cite to their Exhibit 1, an email exchange between Rodriguez and persons employed with the Law Office of Jonlyn M. Martinez. However, the attached email from Rodriguez is not responsive to defense counsel's question about which Plaintiffs and witnesses need interpreters. Furthermore, it is clear from the complete set of emails, attached by the Defendants, that Rodriguez advised, "Also, all except Diego, Stephanie, Graciela and Barbara Gutierrez need Spanish interpreters." (Doc. 89 Ex.

three of the deponents on behalf of whom a Spanish interpreter was requested spoke English. (Doc. 89 at 14.) These individuals were Geraldo Estrada, Paula Torres and Sergio Arredondo. (*Id.*) The Defendants reserved and paid for an interpreter for these three individuals. (*Id.*)

The Defendants noticed the depositions of Plaintiffs Garcia and Bonilla for April 25, 2011. (Doc. 89 at 2.) Upon request by Plaintiffs' counsel on April 7, 2011, those depositions were reset to April 15, 2011. (Doc. 89 Ex. C.) The day before the deposition, Plaintiffs' counsel advised the Defendants that Bonilla was incarcerated and would not be able to attend his deposition.[6] (Doc. 89 at 2; Doc. 89 Ex. D.) Bonilla had been arrested on April 1, 2011. (Doc. 89 at 3; Doc. 89 Ex. E.) The Plaintiffs did not file a motion for protective order or notice of non-appearance, and Bonilla did not appear for his deposition. (Doc. 89 at 3.)

Garcia did appear for her scheduled deposition, but she arrived an hour and fifteen minutes late due to car troubles. (Doc. 89 at 3; Doc. 89 Ex. F.) During the deposition, Garcia disclosed that two additional people witnessed the events at issue: her mother, Ofelia Garcia, and her mother's ex-spouse, Sotero Almaraz. (Doc. 89 at 3; Doc. 89 Ex. F.) These witnesses were not previously disclosed. (Doc. 56; Doc. 89 at 3; Doc. 89 Ex. G.) However, they were disclosed within the discovery period. (Doc. 89 at 4.) The Plaintiffs fail to explain why these witnesses were not revealed in Rule 26 disclosures or in supplementation to those disclosures at some earlier date. Garcia also had not provided a medical release as of May 2, 2011 and did not advise the Defendants that she

---

B.)

[6] The Plaintiffs assert in their response that Rodriguez's attempts to reach Bonilla and Garcia were unsuccessful until the day prior to the deposition, so he was unaware of Bonilla's incarceration, and that defense counsel agreed to take the deposition outside the discovery period. (Doc. 97 at 3-4.) However, this statement is not supported by any sort of proof or affidavit.

does not have a social security number in response to the Defendants' interrogatories. (Doc. 89 at 9.)

Ramon Torres appeared for his deposition but failed to be completely honest and forthcoming in his testimony. When asked about his criminal history, he testified that he had only been arrested once, in 2003, for DWI. (Doc. 105 Ex. M at 18:16-21:14.) He further testified that, prior to the alleged acts by the Defendants, he never had trouble with his blood pressure and that it was always normal. (*Id.* at 120:19-121:4.) However, the Defendants found documentation demonstrating that both of these assertions are false. Torres was arrested in July 2001 for DWI and in February 1997 for failure to pay fines. (Doc. 89 Ex. J.) It is unclear whether he was arrested for DWI only once in 2001 or in 2001 and again in 2003. (*See* Doc. 106 at 7.) The Plaintiffs fail to explain why these arrests were not originally disclosed in response to the Defendants' interrogatory, though the response was amended pursuant to the Court's order to include the correct information after May 2, 2011. (*See* Doc. 117 Ex. 1 at 11.) Torres was also diagnosed with hypertension in 2005, four years prior to his interaction with the Defendants.[7] (Doc. 89 Ex. K.) Torres did testify in his deposition, though, that his medication affects his memory. (Doc. 105 Ex. M at 10:1-11:5.)

Ochoa and Marquez were scheduled to have their depositions taken on April 22, 2011. The day before, while Ramon Torres' deposition was underway, a fire alarm went off and all parties

---

[7] The Plaintiffs assert that Torres' 2005 records simply demonstrate that his blood pressure was elevated when he went to the doctor due to a finger laceration. The records indicate that Torres' primary diagnoses that day were "1) Foreign body in right hand 2) Hypertension (During visit)." (Doc. 89 Ex. K at 1.) The record further indicates, "Patient has been told by LCDF that his BP is increased, but has not started him on any medications as yet." (*Id.* at 4.) Thus, Plaintiffs' assertion that it was a single instance of high blood pressure is contradicted by this record. Furthermore, even if he was just diagnosed with hypertension on this one occasion in 2005, he should have revealed that information in response to the question about whether he had ever previously had trouble with his blood pressure. (Doc. 105 Ex. M at 120:19-121:4.)

10

evacuated the building. (Doc. 89 at 5.) The parties agreed to complete Torres' deposition the next morning, delaying Marquez's deposition by one hour. (*Id.*) Rodriguez called his clients "to reschedule their deposition." (Doc. 97 at 8.) He left a message for his clients, and Ochoa and Marquez called Rodriguez back, leaving a message that they would be available in two weeks to attend their depositions. (Doc. 89 at 5.) Counsel for Defendants later agreed to reschedule these depositions for a date outside the discovery deadline. (Doc. 97 at 6; *see* Doc. 106 Ex. U; *also* Doc. 108 Ex. T.)

    C.    *Orders to Show Cause*

    In addition to the conduct of discovery, this case has suffered due to Rodriguez's repeated failures to comply with court orders, leading to orders to show cause and show cause hearings. While the issues resolved by the show cause hearings and subsequent orders imposing sanctions are not revisited here, the resolution of the present motions depends in part on the Plaintiffs' overall disposition to comply with their discovery obligations and this Court's orders. For that reason, it is important to describe the underlying reasons for the show cause orders and the resulting outcomes.

    On February 9, 2011, a telephonic status conference was scheduled to take place before me. (Doc. 59.) However, Rodriguez failed to initiate or participate in the telephone call. (Doc. 71.) I set a show cause hearing, and I warned the Plaintiffs that failing to comply with court orders and to appear at pretrial hearings could result in the imposition of sanctions including dismissal with prejudice. (*Id.* at 1.) Rodriguez did not appear for the hearing as ordered. (Doc. 72 at 1.) Another show cause hearing was set and I warned that the "persistent failure to comply and to appear may result in the imposition of sanctions under FED. R. CIV. P. 16(f) and the institution of civil or criminal contempt proceedings." (Doc. 73 at 1.)

Rodriguez did appear for the March 3, 2011 show cause hearing. He represented that he had not received the orders, and I accepted his explanation despite the mathematical improbability that he had not received two separate orders of the Court. (Doc. 76 at 1.) I imposed sanctions against Rodriguez including a requirement that he attend a CM/ECF training class. (*Id.* at 2.)

I filed a third order to show cause on April 8, 2011 because Rodriguez had not submitted proof of completion of a CM/ECF class, which was due on April 4, 2011. (Doc. 84.) This show cause order was subsequently quashed because Rodriguez advised me that no CM/ECF classes were held prior to the deadline set by the Court. (Docs. 85 at 1-2 & 86.) Even though the order was later quashed, Rodriguez failed to advise the Court of the situation prior to the expiration of the April 4 deadline.

A fourth show cause order was filed on May 2, 2011 as a result of the Plaintiffs' failure to comply with the order setting a settlement conference and the submission of statements to the Court that lacked support in the record. (Doc. 88 at 1-2.) A show cause hearing was set and I again warned Rodriguez that sanctions, including dismissal with prejudice, and/or contempt proceedings could be imposed. (*Id.* at 2.) Based on the hearing, I found that the Plaintiffs disregarded a court order and that Rodriguez "made false, albeit unintentional, representations to the court." (Doc. 94 at 3.) I further found that Rodriguez, rather than his clients, was at fault for these transgressions. As a sanction, I ordered that Rodriguez complete six additional CLE credits on specific topics. (*Id.* at 5.) I further warned Rodriguez that "any future failure to comply with a court order, in this case or any other before me, will result in a request to the Chief Judge that he be removed from the federal bar." (*Id.* at 6.)

MOTIONS AT ISSUE

A.      *Motion to Dismiss and for Sanctions for Discovery Abuse by Plaintiffs (Doc. 89)*

The Defendants first filed a motion seeking the dismissal of all claims brought by Bonilla, Garcia, Ramon Torres, Ochoa and Marquez pursuant to Federal Rule of Civil Procedure 37 and an award of costs and fees incurred in the motion. (Doc. 89 at 15.) The Defendants levy a number of accusations against the Plaintiffs, largely arising from their depositions. The Plaintiffs oppose the imposition of sanctions and contend that they attempted to fully comply with all discovery obligations. (Doc. 97 at 1-2.)

The Defendants contend that dismissal of each of these Plaintiffs' claims is appropriate based on the totality of the circumstances surrounding the depositions, as described above. (Doc. 89 at 6.) They assert that they have been prejudiced by mounting costs for travel and fees for interpreters and attorneys. (*Id.* at 7.) They also claim prejudice due to the late disclosure of two additional witnesses who were known by the Plaintiffs from the outset.[8] (*Id.* at 7-8.) The Defendants further request reimbursement for their costs and fees incurred due to the cancelled depositions and the deponents for whom a Spanish interpreter was requested but not needed. (*Id.* at 14-15.)

The Plaintiffs urge that the case not be dismissed. In so doing, they apply the legal standards applicable to a motion to dismiss and argue that, at least as to Ramon Torres, the motion should be converted to one for summary judgment. (Doc. 97 at 2 (citing *Morse v. Regents of Univ. of Colo.*, 154 F.3d 1124 (10th Cir. 1998)).) They contend that certain facts make dismissal inappropriate, specifically that defense counsel agreed to conduct the remaining depositions outside of the

_____

[8] Alternatively, they request that the Court strike these witnesses.

13

discovery deadline and that the Defendants did not begin to schedule their depositions until thirty

days prior to the discovery deadline. (*Id.* at 1.) Furthermore, they argue that the Defendants have not

been prejudiced by the delayed disclosure of witnesses where they had already agreed to hold other

depositions outside the discovery period. (*Id.* at 6.) They assert that Torres "did not try to hide

anything from Defendants . . . ." (*Id.* at 8.) They state that all parties "seemed all too happy" to

reschedule the depositions of Ochoa and Marquez for a date outside the discovery period. (*Id.* at 9.)

Finally, they argue somewhat nonsensically that they should not be ordered to pay expenses for the

interpreter because Rodriguez responded promptly to emails to set the depositions, which were not

requested until the last minute. (*Id.* at 9-10.)

The Defendants draw attention to the incorrect standard of review applied by the Plaintiffs.

(Doc. 106 at 1.) They reassert that the "Plaintiffs' conduct caused Defendants to incur unnecessary

expenses and delays and continues to increase the cost of litigation." (*Id.* at 2.) They contend that

the date on which they requested depositions is irrelevant because the Plaintiffs agreed to the

deposition dates and because any delay resulted from the Plaintiffs' failure to provide discovery

responses. (*Id.*) In sworn affidavits, counsel for the Defendants state that they agreed to conduct

depositions outside of the discovery period only after it was clear that they had no other option.

(Doc. 106 Ex. U at 2; Doc. 108 Ex. T at 2.)

B.      *Motion to Disqualify Plaintiffs' Counsel and for Sanctions (Doc. 98)*

The Defendants subsequently filed a motion seeking the disqualification of Rodriguez and

the imposition of sanctions based on the alleged *ex parte* conversations between Rodriguez and the

two individual Defendants as well as the failure to provide requested documentation regarding

Plaintiffs' criminal histories and criminal cases. (Doc. 98.) In addition to the disqualification of

14

Rodriguez, the Defendants request that the Plaintiffs be prohibited from using information gleaned in the conversations between Rodriguez, Gojkovich and Ward, that the Plaintiffs be ordered to produce all statements, memos and notes regarding the conversations between Rodriguez and any individual Defendants, that the Plaintiffs be ordered to produce all documents and notes related to criminal cases, that the claims by Plaintiffs who provided false and/or incomplete information in discovery be dismissed, and that reasonable expenses be awarded. (*Id.* at 1-2.)

The Defendants assert that Rodriguez violated New Mexico Rule of Professional Conduct 16-402 by speaking with represented parties about the subject matter at issue in this case without the consent of their lawyer. (Doc. 98 at 7-8.) They also argue that the individual defendants had speaking authority for Doña Ana County, so even if they were not individually represented parties, Rodriguez was still required to request permission from Doña Ana County's attorney. (Doc. 115 at 3-4.) They contend that Rodriguez knew that they were represented because the actions complained of occurred in the scope of Gojkovich and Ward's employment and so Doña Ana County is statutorily required to provide a them with a defense. (*Id.* at 5 (citing NMSA 1978, § 41-4-4(b)).) They also contend that actual knowledge of representation can be implied because Rodriguez has previously sued Doña Ana County and its employees, and he therefore knows that an attorney is employed by Doña Ana County to provide a defense for employees. (*Id.* at 6.)

Furthermore, the Defendants insist that Rodriguez's participation in the disclosure of false, misleading, and incomplete information by the Plaintiffs warrants the imposition of sanctions. (Doc. 98 at 9-11.) They contend that certain defenses may have been available under *Heck v. Humphrey*, 512 U.S. 477 (1994), res judicata and/or collateral estoppel based on the state criminal case, but that Rodriguez's failure to disclose information from the criminal cases prevented them from asserting

15

those defenses. (Doc. 98 at 10.) They further argue that Rodriguez has an affirmative duty to verify discovery responses, which he violated by producing false social security numbers. (*Id.*) The Defendants state that these ethical issues demonstrate "Rodriguez'[s] total disregard for his ethical obligations in the course of litigating this case." (*Id.* at 4.)

The Plaintiffs respond that neither disqualification nor sanctions are appropriate. (Doc. 100.) First, they contend that the individual Defendants were not yet represented when the conversations took place. (*Id.* at 2.) Second, they assert that the Defendants have not been prejudiced because Gojkovich and Ward did not disclose confidential information. (*Id.* at 2, 6.) The Plaintiffs posit that Rodriguez was under no duty to verify the accuracy of the social security numbers provided by his clients, but that all numbers were valid tax identification and social security numbers. (*Id.* at 3.) They state that the Plaintiffs who lacked social security numbers did not provide them. (*Id.* at 4.) They contend that all documents concerning the criminal cases were provided and that the records were public so could have been obtained easily by the Defendants. (*Id.* at 4, 8.) Finally, the Plaintiffs assert that dismissal and disqualification are not permitted because there are disputed issues of material fact. (*Id.* at 2.)

C.      *Motion for Sanctions for Plaintiffs' Failure to Comply with the Court's Order (Doc. 117)*

The Defendants next request that sanctions be imposed against all Plaintiffs due to their failure to comply with my order granting the Defendants' motion to compel. (Doc. 117 at 1.) As described above, a number of the Plaintiffs' responses remain incomplete and include untimely disclosures. The Plaintiffs, however, contend that they complied and produced discovery responses in good faith. (Doc. 119 at 1-2.) They argue that any contradictions between written discovery responses and deposition testimony are issues of veracity to be resolved by the fact-finder. (*Id.* at

3-4.) Furthermore, the Plaintiffs contend that there is great public interest in resolving their claims on the merits, that they cannot recall some information from many years ago, and that the Defendants are not prejudiced by the alleged failure to provide discovery. (*Id.* at 2-3.) They conclude that the Court should mediate a resolution to the Defendants' complaints and extend the discovery deadline. (*Id.* at 4.) The Defendants counter that the time for mediation has passed and that the Plaintiffs' continued failures to comply have caused the Defendants to experience delay and added costs. (Doc. 122 at 6.)

D.    *Motion to Allow an Extension of the Discovery Deadline and Informal Mediation or in the Alternative Oral Argument and Evidentiary Hearing in Consideration of Defendants' Motion to Dismiss and for Discovery Violations (Doc. 123)*

Presumably because of the pending motions by the Defendants, the Plaintiffs filed a separate motion on July 8, 2011 requesting an extension of the discovery deadline or, alternatively, an evidentiary hearing on the pending motions.[9] (Doc. 120.) The Plaintiffs contend that they have been given no opportunity to mediate the discovery dispute before the Court (Doc. 121 at 3), in spite of the fact that I volunteered to discuss any disputed issue by telephone if contacted by the parties and the only previous discovery dispute presented before me was in the form of a motion to compel. They also reassert a number of arguments related to the pending motions for sanctions.[10] In response, the Defendants characterize the Plaintiffs' motion as "an attempt to take a second bite at the apple

---

[9] It appears that the Plaintiffs envision an evidentiary hearing in which the Plaintiffs would provide the answers to discovery requests that have been required since discovery began pursuant to questioning by the Court. (Doc. 121 at 5.)

[10] One of the Plaintiffs' arguments is that dismissal is an unduly harsh sanction for the violation of a local rule. (Doc. 121 at 3, 4.) At issue in the three motions for sanctions are the Federal Rules of Civil Procedure, the New Mexico Rules of Professional Conduct, and the order of this Court, not a local rule.

. . . ." (Doc. 123 at 1.) They state that the Plaintiffs had multiple opportunities to correct the defects in their written discovery responses early in the discovery process and that efforts to mediate the discovery disputes should have occurred prior to the Defendants' request for the Court's intervention. (*Id.* at 2.) They assert that additional time would only lead to further delay and would provide no assurance that the Plaintiffs would actually comply with their discovery obligations. (*Id.* at 3-4.) The Plaintiffs reply that they will suffer irreparable harm if their claims are dismissed and dismissal would be unfair because defense counsel consented to conduct depositions outside the time for discovery. (Doc. 127 at 1-2.)

### LEGAL STANDARDS

The court is vested with the authority to impose sanctions, including involuntary dismissal, for a party's failure to comply with court orders and the discovery requirements set by local and federal procedural rules. *See Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). These sanctions are intended to penalize those whose actions warrant punishment and to deter those who might otherwise be tempted to such actions. *Nat'l Hockey League v. Met. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). Under Federal Rule of Civil Procedure 16(f), a party may be sanctioned for failing to obey a pretrial order. Rule 26(g) allows a court to impose any appropriate sanction against a party and counsel for signing incomplete or incorrect discovery disclosures. Furthermore, Rule 37 authorizes the imposition of appropriate sanctions for failures to comply with a court order, to disclose or supplement information or a witness as required by the rules, and/or to attend a properly noticed deposition. The authorized sanctions are described in Rule 37(b)(2)(A)(ii)-(vii).

A sanction imposed for a discovery violation must be "both just and related to the particular claim which was at issue . . . ." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992) (quoting

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)) (internal quotation marks omitted). One of the sanctions available for misconduct in the course of pretrial litigation is the partial or complete dismissal of the case. FED. R. CIV. P. 37(b)(2)(A)(v). However, our judicial system prefers to resolve cases on their merits, and, consequently, the dismissal of a case with prejudice "should be used as a weapon of last, rather than first, resort." *Ehrenhaus*, 965 F.2d at 920 (quotation omitted); *see also Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1321 (10th Cir. 2011). Because dismissal is an extreme sanction, it is only appropriate where there is "willfulness, bad faith, or [some] fault of petitioner." *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005) (alteration in original) (quotation omitted). Before dismissing a complaint, a court should consider: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Ehrenhaus*, 965 F.2d at 921 (internal citations and quotation marks omitted). The determination of whether dismissal is an appropriate sanction is a highly fact-specific inquiry. *Id.* at 920.

Attorneys practicing in the District of New Mexico are required to comply with the New Mexico Rules of Professional Conduct. D.N.M.LR-Civ. 83.9. One of those rules prohibits communication with persons represented by counsel in the course of representing a client. N.M.R.A. 16-402 (2008). Specifically, the rule provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order. Except for persons having a managerial responsibility on behalf of the organization, an attorney is not prohibited from

19

> communicating directly with employees of a corporation, partnership or other entity
> about the subject matter of the representation even though the corporation,
> partnership or entity itself is represented by counsel.

*Id.* This rule serves to protect a person who has chosen to be represented by counsel in a matter "against possible overreaching by other lawyers who are participating in the matter, interference by those lawyers with the client-lawyer relationship and the un-counseled disclosure of information relating to the representation." *Id.* at Committee Commentary [1].

A violation of a New Mexico Rule of Professional Conduct constitutes professional misconduct and exposes the lawyer to discipline. *See* N.M.R.A. 16-804 (2008). A violation of the rule prohibiting *ex parte* communications with represented individuals may also subject the attorney to disqualification. *See Weeks v. Indep. Sch. Dist. No. I-89*, 230 F.3d 1201, 1211 (10th Cir. 2001) (citations omitted). The standards developed under federal case law apply to the determination of whether an attorney's conduct merits disqualification. *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 (10th Cir. 1994) (citing *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992)).

The district court has broad discretion in determining whether disqualification is the appropriate remedy for improper *ex parte* communications. *Id.* (citations omitted); *see also EEOC v. Orson H. Gygi Co.*, 749 F.2d 620, 621 (10th Cir. 1984). However, disqualification is only appropriate where it serves the purposes underlying the ethical rule and where the necessity of disqualification to protect the integrity of the judicial process outweighs the right of a party to have counsel of its choice. *Am. Plastic Equip., Inc. v. Toytrackerz, LLC*, No. 07-2253-DJW, 2009 WL 902424, at *5 (D. Kan. Mar. 31, 2009). The court is not required to hold an evidentiary hearing prior to ordering disqualification but may need to where there are disputed issues of material fact or where additional evidence is necessary. *Weeks*, 230 F.3d at 1212.

20

DISCUSSION

A.    *Misconduct by the Plaintiffs*

The above recitation of the procedural history of this case and the factual bases underlying these motions demonstrates the egregious nature of the misconduct committed by Rodriguez and the Plaintiffs throughout the discovery phase of this case. I find that Rodriguez and his clients committed the following violations:

**1.    Incomplete Responses to Interrogatories**

Plaintiffs Salinas, Bonilla, Garcia, Velia Torres, Ramon Torres, and Villa repeatedly provided incomplete responses to the Defendants' discovery requests. The responses to Interrogatories Nos. 4, 9, 11, 13, 15, 16, and 19 were incomplete even after the Plaintiffs supplemented their responses pursuant to my order. The responses provided evidence the Plaintiffs' haphazard approach to discovery, in which they simply provide whatever information is remembered at the time with no effort to provide a full response. This assessment of the Plaintiffs' attitude is underscored by the affidavit of one Plaintiff, Salinas, which was prepared on July 5, 2011 and finally provided more complete responses to the interrogatories. (*See* Doc. 119 Ex. 2.) The affidavit was completed approximately two months after the close of discovery and only in response to the motions for sanctions. This highlights the minimal investigation conducted by the Plaintiffs in order to respond appropriately to the Defendants' discovery requests.

**2.    Failure to Disclose Witness Interview Notes**

The Plaintiffs failed to disclose documents regarding conversations with witnesses who were also named Defendants. The Defendants specifically requested "[a]ny and all witness statements, whether written or recorded, pertaining to any allegations involved in this case, including any

21

statement taken from any of the Defendants." (Doc. 77 Ex. 2 at 2, 8, 14, 20.) They also requested "[a]ny and all . . . notes . . . obtained from any person having . . . knowledge relating to the allegations of the Complaint." (*Id.*) The Plaintiffs stated that the documents were attached and would be supplemented as necessary. (*Id.*) The Defendants also requested "copies of all documents from criminal proceedings" and the Plaintiffs responded that they were attached. (*Id.* at 4, 10, 16, 22.) The Plaintiffs failed to provide Rodriguez's notes from conversations with the named Defendants who were interviewed by Rodriguez in connection with the criminal case. They did not assert a privilege or protection from disclosure, and so cannot assert protection under the work product doctrine. *See* FED. R. CIV. P. 26(b)(5)(A); FED. R. CIV. P. 34(b)(2)(c). These notes were clearly encompassed by the requests and should have been provided.

### 3.    Misleading Responses by Bonilla

Bonilla submitted misleading responses to the Defendants' interrogatories. Instead of simply responding to the Defendants' request that the Plaintiffs provide their social security numbers, the Plaintiffs stated that the information was listed on each Plaintiff's medical release form. On Bonilla's form, a number was listed. (Doc. 89 Ex. L at 1.) Clearly, the number is not a valid social security number, considering that he pled guilty to being in this country illegally. However, the Plaintiffs' response to that interrogatory gave the incorrect impression that Bonilla possessed the listed social security number. If it was, as the Plaintiffs assert, a tax identification number, the Plaintiffs could and should have indicated that in their discovery responses. In addition, Bonilla failed to disclose an alias, Marmolejo, that is listed as an alternative name in his criminal information. (*See* Doc. 98 Ex. 3 at 1.) This identifying information is highly relevant because it allows the Defendants to verify background information about the Plaintiffs.

22

### 4.       Inconsistent Responses and Misleading Testimony by Torres

Torres submitted misleading and conflicting responses to the Defendants' discovery requests and provided inconsistent testimony in his deposition. He did not reveal complete or correct information regarding his criminal history. Specifically, he failed to disclose one arrest and provided a different year for a DWI arrest than that shown on his New Mexico criminal history, making it unclear whether he was arrested for DWI a second time outside of the state. He further failed to disclose a prior diagnosis of hypertension, a medical condition that he claims was caused solely by the alleged actions of the Defendants. Finally, he stated in an interrogatory response that he was employed in April of 2009 and missed work as a result of the Defendants' actions but testified in his deposition that he was unemployed at the time. Information relating to damages is highly relevant; such information would assist the Defendants in evaluating the strength of the case against them and any potential liability.

The Plaintiffs argue that Ramon Torres has difficulty remembering, but that any prejudice to the Defendants from these contradictions is minimal since Torres bears the burden of proving his damages. (Doc. 119 at 3.) There is no documentation, such as an affidavit, supporting the assertion that Torres does not remember his employment in April of 2009 or that he does not remember his diagnosis with hypertension in 2005. (*See* Doc. 122 at 3.) However, a reasonable investigation into his medical records and any employment or pay records, if they exist, would demonstrate these facts. Lying in a deposition is grounds for sanctions, and the contradictions within Torres' testimony are troubling and evidence the culpability of the Plaintiffs.

### 5.      Failure to Appear for Depositions

Bonilla failed to attend his deposition despite service of proper notice in violation of Federal Rule of Civil Procedure 37(d)(1)(A)(i). No motion for protective order or notice of non-appearance was filed despite ample time between the arrest and the date of the deposition. The asserted failure of Rodriguez and Bonilla to communicate between April 1 and April 14, 2011 is an unacceptable excuse for Bonilla's failure to appear or to take the necessary steps to excuse his appearance. Furthermore, the fact that defense counsel consented to conduct the deposition outside the discovery period does not assist the Plaintiffs because (1) she consented only after it was clear that Bonilla would not appear for the deposition, (2) the deposition could not be conducted within the time remaining for discovery, and (3) the parties did not advise the Court of the situation or request an extension of the discovery deadline until more than two months after the expiration of discovery.

Ochoa and Marquez also failed to appear for their properly noticed depositions. The Plaintiffs assert, with no supporting evidence, that there was a miscommunication between Rodriguez and his clients on the day prior to the depositions. The Plaintiffs had received proper notice of the deposition, which required their presence. Again, the break-down in communication between the Plaintiffs and Rodriguez does not excuse the Plaintiffs' absence from their depositions.

### 6.      Late Disclosure of Witnesses

During her deposition, Garcia revealed that two additional individuals were present when the events at issue in the complaint occurred. These were not newly discovered witnesses – Garcia's mother and her mother's ex-spouse were present at the scene of the incident and were clearly well-known to Garcia. These individuals should have been disclosed by the Plaintiffs in their initial disclosures, *see* FED. R. CIV. P. 26(a), and they certainly should have been disclosed more than two

24

weeks before the close of discovery. *See* FED. R. CIV. P. 37(c)(1). The Plaintiffs attempted to remedy their omission by adding the witnesses in their final supplemental responses, but that subsequent disclosure is insufficient to cure this glaring omission.

### 7.      Misinformation Regarding Interpreters

The Plaintiffs further misled the Defendants about which witnesses would need an interpreter. The Plaintiffs advised that all witnesses and Plaintiffs aside from four individuals would need an interpreter, and the Defendants retained interpreters accordingly. The Defendants bore unnecessary additional costs because three of those individuals did not actually require an interpreter.

### 8.      Violation of a Court Order

In addition to those violations, I find that Rodriguez and the Plaintiffs violated a court order by again submitting incomplete discovery responses to the Defendants. *See* FED. R. CIV. P. 37(b)(2)(A). I ordered the Plaintiffs to answer Interrogatories Nos. 1, 4, 5, 9, 11, 13, 15, 16 and 19 in full. The Plaintiffs failed to provide complete responses even though they had the ability to do so. The fact that it takes some investigation to find the answer to an interrogatory does not mean that a party is excused from answering it, particularly when the court has ordered a response. Furthermore, if the Plaintiffs did not know an answer and could not discover it with reasonable inquiry, they could have so indicated. Instead, the Plaintiffs failed to supplement interrogatories and omitted entire sections of responses, thus ignoring and violating my order.

B.    *Sanctions*

Based on my finding that the Plaintiffs have committed several acts of misconduct, the issue is whether dismissal is the least severe sanction available to sufficiently punish the Plaintiffs for this pattern of misconduct and to deter the Plaintiffs and others from similar misconduct in the future.

The Tenth Circuit has found that cases were subject to dismissal due to less offensive misconduct. For example, where the district court found that the plaintiff withheld highly relevant medical information about possible pre-existing conditions with no explanation or excuse to the defendants or the court, the district court's decision to dismiss was affirmed. *Freddie v. Marten Transport, Ltd.*, No. 10-2094, 2011 WL 2438655, at *1, 3 (10th Cir. June 20, 2011) (unpublished) (slip op.). The court has also upheld the dismissal of a case where a plaintiff failed to produce documents in response to a discovery request and failed to produce the documents after two separate court orders requiring the production of the documents. *Lee*, 638 F.3d at 1319-20. There, the plaintiff did produce some documents pursuant to the request and additional documents after each order compelling the production of the records. *Id.* The plaintiff also provided more records after the final motion for sanctions was filed. *Id.* at 1320. Nonetheless, the court concluded that dismissal was appropriate. The Tenth Circuit again found dismissal to be an appropriate sanction where the plaintiff moved for a protective order to delay his deposition, the court denied the motion and warned that sanctions would be imposed if he failed to attend the deposition, and the plaintiff failed to appear for the deposition. *Ehrenhaus*, 965 F.2d at 918, 919.

The Plaintiffs rely on a District of Kansas case to support their argument that the failures of some Plaintiffs to appear for their depositions should not result in dismissal. *See Hite v. PQ Corp.*, No. CIV.A. 98-2088-JWL, 1998 WL 895893 (D. Kan. Dec. 10. 1998). The court there found that

26

the defendant was prejudiced by the failure of the plaintiff to appear for the deposition in the form of unnecessary delay and elevated expenses, that the failure to appear was willful, and that the failure to comply with discovery rules interfered with the judicial process because it delayed the court's resolution of the case. *Id.* at *3-4. However, the court found that the lesser sanction of a monetary fine alleviated the prejudice and vindicated the interest of the court. *Id.* at 4. That case is distinguishable. There, the court had never before assessed sanctions. *Id.* at 3. In this case, on the other hand, I have been forced to impose sanctions on three separate occasions.

The Plaintiffs also rely on a case from another circuit to argue that dismissal is inappropriate. They look to *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987), to argue that public interest and public policy would not be served by dismissal. (Doc. 119 at 1-2.) The Ninth Circuit requires courts to look to a different set of factors in determining whether dismissal is appropriate.[11] Nonetheless, the court there concluded that dismissal as a sanction for refusing to provide a detailed pretrial order as required by the court due to lack of financial resources was not an abuse of discretion. 883 F.2d at 130-31.

An analysis of each of the five *Ehrenhaus* factors listed previously demonstrates that the Plaintiffs' extreme misconduct outweighs the judicial system's preference to resolve cases on their merits and that dismissal with prejudice is the least severe and most appropriate sanction.

---

[11] The five factors considered in the Ninth Circuit are: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Malone*, 833 F.2d at 130 (quotation omitted). The Plaintiffs are misguided in arguing that the public's interest in expeditious resolution of litigation would be served by denying the motions for sanctions because clearly the Plaintiffs' continuing misconduct has caused serious delay and hampered the expedient resolution of this case.

### 1. Prejudice to the Opposing Party

The conduct of the Plaintiffs and Rodriguez has substantially prejudiced the Defendants. First of all, the Defendants have been prejudiced by the delay and expense caused by the Plaintiff's multiple transgressions. In *Ehrenhaus*, the court found prejudice to the defendants based on the combination of delay and mounting attorney's fees, though the court noted that delay alone is insufficient to warrant dismissal. 965 F.2d at 921; *see also Jones v. Thompson*, 996 F.2d 261, 264-65 (10th Cir. 1993).

Here, the Defendants have incurred a number of expenses due to the Plaintiffs' failures, including costs in reviewing the multiple incomplete responses to their discovery requests, investigating on their own to discover the information requested from the Plaintiffs, preparing for and attending depositions for which the Plaintiffs did not appear or appeared late, hiring unnecessary interpreters for depositions, and preparing motions to compel and for sanctions. All of these costs are directly attributable to the actions of the Plaintiffs. While Rodriguez was ordered to reimburse the costs and fees directly resulting from one motion to compel, that does not compensate the Defendants for all of the above listed costs.

The Defendants have also experienced extreme delay due to the Plaintiffs' actions. They were unable to schedule depositions of the Plaintiffs and their witnesses until the month that discovery closed because of the Plaintiffs' evasive and incomplete discovery responses. Furthermore, the Defendants were unable to complete discovery because some Plaintiffs failed to appear for their depositions and because the Plaintiffs never provided complete responses to several interrogatories. Further delay would be required to allow the Defendants to complete discovery. The Plaintiffs did move to reopen discovery, but they did so only after three separate motions for

sanctions were filed by the Defendants. Rather than requesting that discovery be extended in a timely fashion while discovery was still ongoing, the Plaintiffs waited over two months after the expiration of discovery. Additionally, they stated no grounds for an extension aside from the pending motions for sanctions. This motion does not remedy the prejudicial delay that the Plaintiffs have caused the Defendants.

Furthermore, the Defendants have been substantially prejudiced because the Plaintiffs withheld information and gave misleading responses. "The withholding of evidence 'substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout litigation.'" *Freddie v. Marten Transport, Ltd.*, No. 10-2094, 2011 WL 2438655, at *3 (10th Cir. June 20, 2011) (unpublished) (slip op.) (quoting *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1180 (10th Cir. 2009)). Because of the Plaintiffs' lackadaisical and dismissive approach to discovery, the Defendants are "'forced either to attempt independent corroboration of each submission, at substantial expense of time and money,' or to accept the possibility that every document or statement submitted by [the plaintiff] . . . is incomplete or inaccurate." *Id.* (quoting *Garcia*, 569 F.3d at 1180) (alterations in original).

I find that the delay, expense, and doubt resulting from the Plaintiffs' failures to comply with their discovery obligations and the Court's order substantially prejudices the Defendants.

## 2.       Judicial Interference

The judicial process has been undermined by the Plaintiffs' conduct in this litigation. This case has required repeated court intervention due to the Plaintiffs' failures to appear and to participate meaningfully in discovery. I have been forced to order sanctions on three separate occasions, to file four show cause orders, to hold two show cause hearings, and to grant a motion

to compel. In this order alone, I have considered three additional motions for sanctions, one of which is based on a failure to comply with my order granting the motion to compel.

Additionally, as stated in *Ehrenhaus*, willful failure to comply with a direct court order flouts the court's authority and interferes with the orderly administration of justice. 965 F.2d at 921. I have already found that the Plaintiffs failed to substantially comply with my order granting the Defendants' motion to compel by again failing to provide complete answers to each question as ordered. That action by the Plaintiffs impedes the judicial process and undermines the authority of the court.

Finally, the false testimony by Ramon Torres regarding his medical history, the misleading responses by Bonilla regarding his social security number and aliases and Ramon Torres regarding his employment, and the failure of all Plaintiffs to provide notes from Rodriguez's interviews with Gojkovich and Ward are intolerable. Lying under oath, in particular, erodes public confidence in the judiciary and interferes with the judicial process. "Turning a blind eye to false testimony erodes the public's confidence in the outcome of judicial decisions, calls into question the legitimacy of courts, and threatens the entire judicial system." *Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, No. 00 C 5658, 2002 WL 1433717, at *12 (N.D. Ill. July 2, 2002) (quoting *Quela v. Payco-Gen. Am. Creditas, Inc.*, No. 99 C 1904, 2000 WL 656681, at *7 (N.D. Ill. May 18, 2000)). Harsh sanctions are necessary to combat the effects of such deceptive and misleading conduct.

I find that the Plaintiffs and Rodriguez have interfered with the judicial process by causing delay and unnecessary court intervention, flouting a court order, and engaging in deceptive and misleading tactics.

### 3.    Culpability

Often, the harsh sanction of dismissal is reserved for those cases where the actions of the attorney and his client demonstrate "flagrant bad faith" and "callous disregard" of their responsibilities. *State of Ohio v. Arthur Andersen & Co.*, 570 F.2d 1370, 1375, 1376 (10th Cir. 1978) (quoting *Nat'l Hockey League*, 427 U.S. at 643). However, such extreme bad faith is not necessary to find that dismissal is warranted. Rather, the Tenth Circuit has "upheld dismissals and defaults where the parties themselves neglected their cases or refused to obey court orders . . ." but has "reversed dismissals and defaults . . . where inadvertence or simple neglect were the basis of the court's decision." *Davis v. Miller*, 571 F.3d 1058, 1063 (10th Cir. 2009) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464-65 (10th Cir. 1988)).

The conduct of discovery throughout this case demonstrates at best that the Plaintiffs have neglected their discovery obligations and court orders. At worst, the actions of the Plaintiffs demonstrate an affirmative attempt to conceal information from the Defendants and to mislead them about the contacts between Rodriguez and the named Defendants, Plaintiffs' backgrounds, the witnesses to the events at issue, and the damages incurred.

I find that the Plaintiffs are culpable for the above described violations. They were able to provide more complete and truthful information, but failed to do so as required by law and the order of this Court.

### 4.    Notice

"Notice is not a prerequisite for dismissal under *Ehrenhaus*." *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1149 (10th Cir. 2007) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 632 (1962) (upholding dismissal predicated upon trial court's inherent authority and stating

that "absence of notice as to the possibility of dismissal . . . [does not] necessarily render such a dismissal void.")); *Archibeque v. Atchinson, Topeka and Santa Fe Ry. Co.*, 70 F.3d 1172, 1175 (10th Cir. 1995) (affirming dismissal pursuant to *Ehrenhaus* test despite absence of warning about imminent dismissal)); *see also Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1180 (10th Cir. 2009). Notice is an important factor, however, and constructive notice has been held to be sufficient to support dismissal. *Ecclesiastes 9:10-11-12, Inc.*, 497 F.3d at 1149-50; *Ehrenhaus*, 965 F.2d at 921 (finding notice satisfied where the court orally invited the defendant to file a motion to dismiss if plaintiff failed to attend a deposition). Furthermore, the motion to dismiss itself may be sufficient to provide notice. *See Donaldson v. Clark*, 819 F.2d 1551, 1560 (11th Cir. 1987) (notice for imposition of Rule 11 sanctions sufficient if it comes from the party seeking sanctions).

The Tenth Circuit has found sufficient notice where a district court's second show cause order warned that "failure to properly show cause as to why petitioner failed to comply with this court's first show cause order could result in dismissal of this lawsuit." *Davis*, 571 F.3d at 1063 (internal quotation and alterations omitted). Here, I have repeatedly warned Rodriguez and the Plaintiffs that failure to comply with the federal rules and court orders could result in the imposition of sanctions. (*See* Doc. 71 at 1; Doc. 73 at 1; Doc. 87 at 9; Doc. 88 at 1.) Although some of these warnings were directed at Rodriguez rather than the Plaintiffs, they provided notice that violations of court orders would not be tolerated and would be punished with sanctions possibly including dismissal with prejudice. Thus, notice was provided to the Plaintiffs.

Moreover, one of the discovery violations is premised on Torres' dishonest responses in his deposition. "Once a witness swears to give truthful answers, there is no requirement to warn him not to commit perjury or, conversely to direct him to tell the truth." *Chavez v. City of Albuquerque*, 402

32

F.3d 1039, 1045 (10th Cir. 2005) (quotation omitted). Thus, notice is not required to impose a sanction of dismissal based on dishonesty under oath.

### 5.    Lesser Sanctions

This Court has already imposed a substantial award of attorney's fees and costs against Rodriguez as a result of the Defendants' motion to compel. (Doc. 123 at 3.) Alternative sanctions have also been imposed against Rodriguez on two occasions. (Doc. 76 at 2; Doc. 94 at 5.) To my knowledge, Rodriguez has complied with those sanctions. However, the Plaintiffs have been undeterred from further misconduct. Moreover, the misconduct in this case is not limited to a single event; there is a pattern of willful disregard of discovery obligations and court orders. I can craft no sanction that will sufficiently remedy the prejudice to the Defendants, vindicate the Court's interest, punish the Plaintiffs for their myriad of transgressions, and deter future litigants from similar conduct aside from dismissal with prejudice.

### 6.    Other considerations

Some of the material that the Plaintiffs failed to produce in their supplemental responses has since been produced. However, that does not absolve the Plaintiffs of responsibility for their failure to respond in their original responses or to comply with a court order. *Cardena v. Dorel Juvenile Grp., Inc.*, No. CV.A.04-2478 KHV-DJW, 2006 WL 1537394, at *6 (D. Kan. June 1, 2006) (citing *Ohio v. Arthur Andersen & Co.*, 570 F.2d 1370, 1374 (10th Cir. 1978)). "Parties cannot be permitted to jeopardize the integrity of the discovery process by engaging in halfhearted and ineffective efforts . . ." to produce discovery. *Id.* (quoting *Bratka v. Anheuser-Busch Co., Inc.*, 164 F.R.D. 448, 461 (S.D. Ohio 1995)).

In sum, each *Ehrenhaus* factor weighs against the Plaintiffs and in favor of dismissal. These factors, as applied to the facts of this case, outweigh the judiciary's strong interest in resolving claims on their merits. Therefore, I conclude that dismissal with prejudice is warranted as a sanction for the Plaintiffs' repeated and continuing misconduct.

*C.     Disqualification*

It is not disputed that Rodriguez communicated with two named Defendants, Gojkovich and Ward, after this federal civil suit was filed regarding the subject matter at issue in both the civil suit and the criminal charges pending against his clients. Rather, the disputes surround whether those communications were in fact ethical violations and, if they were, the appropriate remedy.

Despite the disputed facts about the timing and frequency of the communications, it is clear that Rodriguez transgressed an ethical boundary by personally contacting the named Defendants in this case. Assuming Rodriguez's version of the facts to be true, the communications transpired prior to the entry of an appearance by defense counsel. However, Rodriguez was aware that he named these individuals as Defendants in the civil complaint that he prepared and filed. Furthermore, he was aware that he sued government employees for actions taken within the scope of their employment. By law, the government entity or an insurance company is required to provide them with representation for their defense. N.M. Stat. Ann. § 41-4-4(b). Rodriguez's assertion that he contacted these Defendants before Doña Ana County had an opportunity to obtain their representation or before their counsel had entered an appearance is to no avail.

The notion that an attorney cannot skirt his ethical obligation to refrain from *ex parte* communications by contacting a named defendant after suit is filed but before counsel has been retained comports with the spirit and purpose of the New Mexico Rule of Professional Conduct 16-

34

402. However, because dismissal of the case is recommended based on the myriad of violations by the Plaintiffs, I will neither condemn Rodriguez for an ethical violation nor determine the appropriate remedy. Should the district court decline to adopt my recommendation, I will set the disqualification motion for a hearing in order to make findings regarding the disputed factual issues. If, on the other hand, my recommendation is adopted, this case will be dismissed with prejudice and the motion to disqualify will be moot.

However, consistent with my prior order imposing sanctions against Rodriguez (Doc. 94 at 3), I will submit this document and my previous orders imposing sanctions to the Chief Judge, along with a recommendation that Rodriguez be removed from the federal bar due to his misconduct and repeated violations of court orders throughout this litigation.

D.     *Payment of Expenses*

Where a motion for sanctions is granted, the court generally "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees . . ." FED. R. CIV. P. 37(b)(2)(C). An order of payment is not required where the failure warranting sanctions was substantially justified or "other circumstances make an award of expenses unjust." *Id.* Though the conduct of the Plaintiffs throughout this litigation was clearly unjustified, the imposition of the sanction of dismissal with prejudice is sufficient to serve the purposes intended. I find that it would be unjust to order the further sanction of the payment of the Defendants' expenses.

## RECOMMENDATION

For the foregoing reasons, I recommend that the Defendants' Motion to Dismiss (Doc. 89) and Motion for Sanctions (Doc. 117) be granted in part and denied in part, that Defendants' Motion to Disqualify Plaintiffs' Counsel and for Sanctions (Doc. 98) be denied as moot, and that Plaintiffs' Motion for an Extension of the Discovery Deadline (Doc. 120) be denied. I recommend that this case be dismissed with prejudice as a sanction for the Plaintiffs' discovery abuses.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition.  If no objections are filed, no appellate review will be allowed.**

---

William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.

36